No. 49.—HENRY HARRIS, plaintiff in error, *vs.* LEGRAND S. CAN-NON and another, defendants.

[1.] If a deed of bargain and sale be executed by an *infant,* it may be avoided by another deed of bargain and sale, made to a third person, without entry by the infant, when he arrives at age, in case the land continue in the posses-sion of the infant, or be vacant and uncultivated.

[2.] If, when the second deed be executed, the lands be holden *adversely* to the infant, *it seems* that the second deed will not amount to a revocation of the first conveyance.

[3.] If the subscribing witnesses to a deed reside out of the State, secondary evidence may be resorted to, to prove its execution.

[4.] Is it competent for the lessor of the plaintiff, in an action of ejectment, to prevent a recovery, by a conveyance of the premises to the defendant, after suit brought?

Ejectment, in Meriwether Superior Court. Tried before Judge HILL, August Term, 1848.

This was an action of ejectment, brought on the several demi-ses of Cannon and Moses Sinquefield, to recover a lot of land sit-uated in the County of Meriwether.

On the trial, the plaintiff offered in evidence a grant from the State of Georgia to Cannon, for the premises in dispute, and a deed from Cannon to Sinquefield, bearing date on the 22d No-vember, 1845, and proved by a witness the possession of Harris, at the commencement of the suit, and during the year 1845, and continuously up to the trial of the cause, and closed.

The defendant introduced a deed, executed by Cannon to one Griffin, on the 11th February, 1841, and a deed from Griffin to the defendant, dated on the 2d of June, 1841.

The plaintiff then offered the testimony of a witness, taken by commission, to prove that, at the time Cannon made the deed to

Griffin, he was a minor ; to which the defendant objected, on the ground that the plaintiff had shown title out of Cannon, and that Cannon's infancy was a personal privilege, of which plaintiff could not avail himself.

The Court overruled the objection, and admitted the evidence, to which decision defendant excepted.

The defendant then offered in evidence a second deed from Cannon, which was executed on the 30th of August, 1847, to the defendant, in the State of Florida, and was attested by two witnesses, both of whom made their attestation officially, as Justices of the Peace ; one whose character as such was authenticated by the certificate of the Clerk of Wakulla County, where the deed purported to have been made, and also, by the certificate of the Secretary of State of the State of Florida.

It appeared that the witnesses were residents of the State of Florida, when the deed was executed, and at the time of trial.

The counsel for plaintiff objected to the admission of this deed in testimony, and the Court sustained the objection, and the defendant excepted.

The defendant then introduced a witness, who was not one of the subscribing witnesses, to prove the execution of the deed, and the hand-writing of the attesting witnesses. To this testimony, counsel for plaintiff objected. The Court sustained the objection, and the defendant excepted.

The defendant offered in evidence, an order, purporting to be from Cannon, for the settlement of the case, which was attested by the witnesses, who attested the deed, to which plaintiffs objected. The Court sustained the objection, and the defendant excepted.

The counsel for the defendant asked the Court to charge the Jury, that in making their verdict, they should find specifically on one or the other of the two demises laid in the declaration, which the Court refused to do ; but on the contrary, did charge the Jury that they might render a general verdict ; to which decision and charge of the Court, defendant excepted, and upon the said several exceptions, assigned error.

ALEXANDER, for plaintiff in error.

DOUGHERTY & STROZIER, for defendants:

*By the Court.*—Lumpkin, J. delivering the opinion.

[1.] The first point presented in the record is, could Sinque-field, the grantee of Cannon, take advantage of the infancy of the infancy of the latter, in order to set aside the deed from Cannon to Griffin, made in 1841, and under which Harris, the defendant, claims? There is much contradictory authority upon this vexed question. The *dictum* is to be met with every where in the Digests and Text Books, that infancy is a personal privilege, of which no one can take advantage but the infant himself. The difficulty is, in the application of this abstract principle.

In *Nightingale vs. Withington*, (15 *Mass. R.* 261,) a minor had received a promissory note, in payment of his labors, in the employment of the maker of the note, and had indorsed the same to a third person, for a valuable consideration, the indorsee knowing the indorser to be under age ; and afterwards, the father of the minor received the amount of the maker, in discharge of the note, both the father and the maker knowing of the indorsement ; the indorsee was allowed to recover judgment against the maker, and *Parker*, Chief J. in delivering the opinion of the Court, said, " If an action should be brought against the infant, as indorser, for the default of payment by the promisor, without doubt, he may avoid such action by a plea of infancy ; but that is a personal privilege which none but himself can set up, in avoidance of any contract made in his favor."

The same eminent Judge, in delivering the opinion of the Court, in *Worcester vs. Eaton*, (13 *Mass. R.* 375,) remarked that, " it is a general principle, that when infancy is set up in defence, against a deed, it must be in the form of a special plea, infancy not making a deed void, but voidable ; and yet, it is held, that an infant, who has conveyed his land by deed of feoffment, or by bargain and sale enrolled, may, by entry, either within age or after, if he has not assented to the conveyance, after coming of age, revest the title in himself. The requisition of the plea of infancy, is undoubtedly applicable only to executory contracts." He continues—" Until a deed so made is avoided, no subsequent conveyance by the grantor can be good, because he would not be seized of the land ; and none but himself or his heirs can set up a right to avoid a deed for infancy or duress, these being matters in de-

Harris *vs.* Cannon and another.

fence which he may waive, if he see fit, so that the title will remain good to the grantee, by virtue of such deed, until the grantor shall lawfully disaffirm it.   He can do it only by entry, but having entered, his subsequent deed, accompanied by proof of facts, tending to avoid the first, will convey a title."

The case of *Jackson vs. Carpenter*, (11 *Johns. R.* 539,) is an authority directly in support of the judgment below.   An infant, in 1784, conveyed lands in the military tract, and afterwards, in 1794, having arrived to full age, conveyed the same lands to another person, and such conveyance was registered.   It was held, that the lands being waste and uncultivated, he was not concluded by the lapse of time ; and that an entry was not necessary to avoid the former deed, executed by him during his infancy, but that this deed, not being a feoffment, might be avoided by one of the same nature and equal notoriety.

And the same doctrine was reiterated to the fullest extent, in *Jackson vs. Burchin*, (14 *Johns. R.* 124,) where the Supreme Court held, that a person having conveyed land, when an infant, may avoid his grant, by the same solemnity with which he made it, as if it were a feoffment with livery, by a subsequent feoffment and livery ; if a bargain and sale, by a subsequent bargain and sale.

Other adjudications are to be found in New York, in corroboration of this doctrine.

The same point underwent the most elaborate examination in *Hoyle vs. Stone*, 2 *Dev. & Bat.* 320.    *Burton & Badger* argued the question in behalf of the lessor of the plaintiff, and *Caldwell* for the defendant.    And the Supreme Court held, *Ruffin*, Chief J. delivering the opinion, that a deed of bargain and sale, made by an infant, is avoided, by his executing, upon his arrival at full age, another deed of the same kind, and for the same land, to a different person.

So, also, in *McGill vs. Woodward*, (3 *Brevard*, 401,) the Court, in specifying the various ways by which an infant may disavow his intention of carrying into effect a contract made during infancy, say, that he may enter upon lands sold or conveyed by him, when under age; or he may, when he comes of age, convey the same land to another.

Chancellor *Kent* cites the cases of *Jackson and Carpenter*, and *Jackson and Burchin*, apparently, with approbation.   He observes, that for an infant to disaffirm the voidable deed of his infancy,

which was by deed of bargain and sale, by an act equally solemn after he becomes of age, *is the usual and suitable course, when the infant does not mean to stand by his contract.* 2 *Kent's Com.* 5 *ed.* 238.

And Mr. Justice *Story,* in *Tucker vs. Moreland,* (10 *Peters' R.* 59,) after thoroughly investigating this principle, declares, that the two decisions in 11 and 14 *Johnson,* proceeded upon principles which were in perfect coincidence with the Common Law.

I have found no case in the English Reports, directly in point. That of *Frost vs. Wolverton, in C. B. Strange's R.* 94, is most nearly analogous. An infant covenanted to levy a fine, by such a time, to such uses. Before the time he came of age ; then the fine was levied ; and by another deed, made at full age, he declared it to be to other uses. The Court held, that the last deed should be that which should lead the uses.

Upon the general principle, therefore, I am strongly inclined to think, that the Court below was right ; and it only remains to inquire whether there be anything in the particular facts of this case, to withdraw it from the operation of the rule.

[2.] In *Tucker vs. Moreland,* the infant had never been out of possession.

In *Jackson vs. Carpenter,* the lands in dispute were *waste and uncultivated.* *Yates,* Justice, in delivering the opinion, adverts to that fact, remarking, that the rules, as to proceedings in ejectment, for a vacant possession, in England, do not apply to the new or unsettled lands of this country ; and that it might with equal propriety be said, that the doctrine of actual entry to avoid a deed given by an infant for new and unsettled lands, is equally inapplicable, and ought to be insisted on only so far as it comports with the principles which gave rise to its introduction.

And in *Jackson vs. Burchin,* Judge *Spencer,* after maintaining with his usual ability, the doctrine already quoted, viz : that the infant can manifest his dissent in the same way and manner by which he first assented to convey, says : " The law does not require idle and non-essential ceremonies ; and it would be idle to require an entry on the premises, in 1795, when, not only this lot, but the whole country in which it was situated, was almost a wilderness. The second deed to the lessors, was neither an act of maintenance nor of fraud, admitting that they knew of the deed to Newkirk, (*the purchaser during the infancy.*)  *I will not say that it*

*might not have been an act of maintenance, had Newkirk been in pos-session of the lot, and holding under the first deed, but he was not."*

In 1837, this point, with the qualification to which these cases refer, came directly before the Supreme Court of New York, in *Bool & Wife vs. Mix,* (17 *Wend.* 119,) and the following proposi-tions were there affirmed:

1. That a deed of *bargain and sale,* made by an *infant,* is like a feoffment, with livery of seizin, *voidable* only, and not *absolutely void*; and *it seems,* say the Court, that the rule is universal, that all deeds or instruments, under seal, executed by an *infant,* are *voidable only,* with the single exception of those which delegate a naked authority—they are void.

2. That a *deed of lands,* executed by an *infant,* cannot be avoid-ed till he come of age, though he may enter and take the profits in the meantime; but *it seems* a sale and manual delivery of *chat-tels,* by an *infant,* may be avoided while under age.

3. Before suit brought for the recovery of possession of lands conveyed in *infancy,* the party must make *an entry upon the land, and execute a second deed* to a third person, or do *some other act* of equal notoriety, in disaffirmance of the first deed—such as de-manding possession, or giving notice of an intention not to be bound by the first deed, or an action cannot be sustained.

4. If there be a *feoffment with livery,* it may be avoided by entry, or by writ *dum fuit infra ætatem.* If a deed of *bargain and sale* be executed, it may be avoided by another deed of bargain and sale, made to a third person, *without entry,* in case the land be *vacant and uncultivated*; but in all other cases, *there must be an ac-tual entry,* for the express purpose of disaffirming the deed.

5. If, when the second deed be executed, the land be holden *adversely* to the *infant,* it seems that the second deed will not amount to a revocation of the first conveyance.

And in *Roberts vs. Wiggins,* (1 *N. H. R.* 73,) it was held, that if the infant was out of possession, he should enter, and if in posses-sion, should explicitly evince his intention to defeat the convey-ance.

Admit, then, the general rule to be as laid down by Lord *Mans-field,* (3 *Burr.* 1804,) and *Shepherd,* in his *Touchstone,* (233,) that all gifts, grants or deeds, made by infants, by matter in deed or writing, which do take effect by delivery of his hand, are voidable

by himself, his heirs and his privies in estate—still, it may be insisted, that this only applies where the land is vacant, or in possession of the infant, or those claiming under him.

But it is otherwise in this case. Harris, the defendant in ejectment, who bought of Griffin, the grantee of Cannon, *the infant,* continued in possession of the premises in controversy, during the year 1845, and down to the present time. The deed by Cannon to Sinquefield, is dated 22d Nov. 1845. It was made, therefore, while Harris held *adversely* to Cannon. It does not appear what time had elapsed from the period when Cannon had attained to majority, and the execution of the second conveyance. In contracts voidable only, by an infant, on coming of age, he is bound to give notice of disaffirmance, within a reasonable time, especially where the first grantee is in possession; otherwise, a confirmation of the act of infancy may be justly inferred. Sinquefield's deed being void, then, as against the act forbidding the sale of pretended titles, how can Harris be treated as a trespasser, and subjected to costs and mesne profits, until some act of disaffirmance by Cannon? Here, there has not only been no entry upon the land, but setting aside Sinquefield's deed for maintenance, Cannon has done no act, whatever, to disaffirm the first conveyance. He has not even demanded possession of Harris, or given him notice that he did not intend to be bound by his first deed to Griffin. This, says Mr. Justice *Bronson,* is the only way in which the Courts can carry out the doctrine, that the deed of an infant is *voidable* only, and not *void.* Although the title of the defendant may be defeated, yet, so long as the deed remains unrevoked, he has the legal seizin of the land, and cannot be sued as a trespasser. It is little better than a contradiction in terms, to say that a man who has the rightful possession of lands, can be treated as a wrong-doer. 17 *Wend.* 136.

[3.] The defendant in ejectment offered in evidence a second deed, from Cannon to himself, dated 30th August, 1847, and also, an order from Cannon, directing the action to be settled. These papers were executed in Florida, and attested each by two witnesses, who subscribed their names officially, as Justices of the Peace, and whose character, as such, was authenticated by the certificate of the Clerk of Wakulla County, where the deed purported to have been made; and also, by the certificate of the Secretary of State of Florida. The witnesses were residents of

Harris *vs.* Cannon and another.

Florida, both at the time when the deed was executed and at the trial. The presiding Judge held, that these documents could not be read, without further proof as to their execution. The defendant then introduced a witness, to prove the actual execution of the deed and order, and the handwriting of the witnesses. Counsel for the plaintiff objected to this secondary evidence, insisting that interrogatories should have been addressed to the subscribing witnesses; and this being the judgment of the Court, the testimony was rejected.

We are unanimous, that in this opinion the Court erred. Whether the subscribing witnesses shall or shall not be resorted to, does not, as we conceive, depend upon the nearness or distance of their residence, either from the parties or the place of trial, but whether or not they reside within the jurisdiction of the Court. If they do, they must be resorted to; if they do not, secondary evidence is admissible, for the simple, yet, most satisfactory reason, that the foreign proof cannot be reached and coerced by the compulsory process of the Court. True, witnesses who reside abroad, will usually answer a commission, yet, they are not bound to do so. Their compliance with the mandate, is not of right, but of grace. And evidence is never deemed secondary, where the better is not within the power, compass or control of the party. And such seems to have been the uniform and unbroken current of decisions, both in England and in this country, from the days of Lord *Holt* to the present time. *Key vs. Gordon,* 12 *Mod.* 521. *Ibid,* 607, *(anonymous.)* 1 *Greenlf.* §572.

Nor does the fact, that the witnesses resided in Florida when these papers were executed, make any difference. The only inquiry is, did they live in the State at the time of the trial?

[4.] But, it is argued, that these instruments, if allowed to go before the Jury, would not avail to defeat the action; that the plaintiff in ejectment is not capable of defeating his own suit, by a conveyance to, or settlement made with, the defendant, after suit brought.

We subscribe to the doctrine, that if the plaintiff is entitled to the possession of the premises, at the time the demise is laid, it will be sufficient, although his right of possession be divested before trial; for the action of ejectment is intended to give the party compensation for the trespass, as well as to enable him to recover possession of the land; and he has a right to proceed for such

trespass, although his right to the possession should cease. *Adams on Ejectment*, 33.

We will not, however, anticipate the legal force and effect of the testimony, when tendered—"Sufficient unto the day is the evil thereof."

The plaintiff in error is entitled to judgment of reversal, and it is accordingly awarded.