## NATHANS *vs.* ARKWRIGHT *et al,*

| 66 | 179 |
|----|-----|
| 92 | 199 |
| 66 | 179 |
| 100 | 37 |
| 66 | 179 |
| 115 | 868 |
| 66 | 179 |
| 117 | 1004 |

1. The deed of an infant is voidable, not void.
(*a.*) The recital of the payment of one dollar as the consideration of a quit-claim deed is sufficient. That it was not actually paid, does not affect the validity of the conveyance. If not paid, it was recoverable.
2. An infant must disaffirm her deed with'n a reasonable time after attaining majority, or her right of avoidance will be lost.
(*a.*) What is a reasonable time will depend upon the facts of each case, but will not be longer than seven years after the disability is removed.
(*b.*) Where a minor remainderman conveys his interest in property, he will not be excused from disaffirming his deed within a reasonable time after attaining majority, because the right to bring ejectment for the land has not accrued.
3. Where a minor, sixteen years of age, claiming a remainder interest in realty, joined in quit-claiming all interest therein, together with her brother, who was also a remainderman, and of age, the quit-claim being in general terms indorsed on the back of a deed from the life-tenant, their mother, and attested by their father, after a lapse of twenty years from her reaching majority, during which valuable improvements were made on the land by a *bona fide* purchaser, such claimant in remainder could not recover the land. In

such a case, ignorance of what she had done would be no protection against prescription.

Infancy. Prescription. Title. Deeds. Before Judge FLEMING. Chatham Superior Court. December Term, 1879.

Reported in the decision.

A. P. & S. B. ADAMS, for plaintiff in error.

CHISHOLM & ERWIN; GEO. A. MERCER, for defendants.

SPEER, Justice.

This is a suit brought by plaintiff in error against the defendants to recover the possession of an undivided moiety or one-half of all that lot, tract or parcel of land containing four acres, more or less, situate, lying and being in said county and within the corporate limits of the city of Savannah, being part of the tract known as the "Sheftall tanyard tract."

To this action defendants filed their various pleas or answers: 1st, the general issue; 2d, possession of said premises *bona fide* under written evidence of title for a period of seven years and more prior to the suit; 3d defendants and those from whom they derived possession claim to have been in possession adversely for a period of twenty years and more; 4th, defendants plead that on the first day of March, 1849, Abigail Hart and her trustee, conveyed *bona fide* and for a valuable consideration, with general covenant of warranty, so much of the said premises as was devised to her by the will of Sheftall, to John S. Montmollin, his heirs and assigns, and that the said Eugenia Hart (plaintiff's lessor), daughter of said Abigal, and her brother, Levi S. Hart, on said first day of March 1849, for a valuable consideration, did demise, release and forever quit-claim unto the said John S. Montmollin all

interest, claim and property they had in the premises, etc., etc. Other pleas were also filed to said suit, which it is not necessary to notice under the view we take of this case, as they are not involved in the judgment herein pronounced.

The lessor of plaintiff is seeking to recover under the will of Levi Sheftall, her grandfather, and she claims the property under certain devises therein contained. Levi Sheftall died testate in 1809, owning what was known as the " tanyard tract" (premises in dispute being a part of the same), and his daughter Abigail M. married Levi Hart in 1818, and had two children, Levi S. Hart, born in 1820, and plaintiff's lessor, born in 1832. The clauses of Levi Sheftall's will relating to the premises in dispute (and under which plaintiff claims title) are as follows :

1. " Respecting my tract of land called 'the tanyard,' it is my will that the same be equally divided between my heirs hereinafter named, but they shall not have it in their power to dispose of or sell any of their shares for twenty years after my decease.

2. " It is my will that whatsoever part or share of my estate, either real or personal, which shall come to either of my daughters hereafter named, the same shall not be liable under the control or subject to any debt or debts of any husband they may intermarry with ; that before any marriage shall take place the portion of my estate which they inherit shall be settled on trustees for their sole and only use, and to be disposed of by my said daughters as they may think proper.

3. " It is my will that my estate be divided in the following manner and to the following named persons, only, that is to say, . . . . to my daughter Abigail Minis Sheftall one equal share of my estate.

4. " In the case of the death of either of my children, to-wit: (here their names are given) before the division takes place or after, without issue legally begotten them, in that case the portion of him or them so deceased shall

only be inherited and divided between my heirs, the sur-- vivor or survivors of my eight children heretofore named.

5. "In case any of my sons or daughters should inter- marry and die leaving issue legally begotten, they shall not inherit their father's or mother's portion of my estate before they attain the age of 18 years, and in case of the death before they attain that age, the property of the father or mother so deceased shall return to my children, I mean the eight which I have so often mentioned."

Before the marriage of Levi Hart with Abigail Minis Sheftall, to-wit, on July 13, 1818, a marriage settlement was made, wherein it was recited that said Abigail, by the will of her father, was entitled "to a proportion of a child's part in his said estate," and whereby was conveyed unto trustees by said Abigail, "all the estate of every des- cription which I have or which I may hereafter have or receive or be entitled to have or receive from my said father's estate; whether the same consists of real or per- sonal property, money, bonds, notes or books of account of what nature, description or kind soever, to have and to hold all the aforesaid property, together with all the es- tate which I, the said Abigail M. Sheftall, may receive or be entitled to receive from the estate of my said father under his will as aforesaid, to them the said Moses Shef- tall and Isaac Cohen and the survivors of them, and to the executors and administrators of such survivors, in trust nevertheless, and to and for the following uses, intent and purposes, and for no other use or purpose whatsoever, that is to say, in trust to and for the sole and separate use of me, the said Abigail M. Sheftall, during my natural life— not subject to the control, direction or management of my said intended husband, Levi Hart, or of any future husband, or to be taken for the payment of any debt which he now has or may hereafter contract, but to be and remain at all times under my sole control, direction, management and disposal, agreeable to the aforesaid will of my deceased father." Under a decree read in evidence

"the tanyard tract," in 1839, was partitioned among the claimants, under the will of Levi Sheftall, and one-sixth part of the tanyard was assigned to Isaac Cohen as trustee for Mrs. Hart, the same being known as No. 5 in said division (the premises now in dispute). Isaac Cohen, trustee, and Abigail M. Hart, conveyed the premises in dispute to John S. Montmollin in fee simple with warranty, by deed bearing date 1st March, 1849. A quit-claim deed from Levi S. Hart and Eugenia M. Hart, plaintiff's lessor, to John S. Montmollin, was indorsed on the conveyance from Isaac Cohen, trustee, *et al.*, bearing same date, conveying for the consideration of one dollar all the interest and property, claim or demand of Levi S. Hart and *plaintiff's lessor* whatsoever, which they might have in certain lots of land which Isaac Cohen, trustee, and Mrs. Abigail M. Hart have conveyed unto the said John S. Montmollin Both of these deeds were recorded in the county records of Chatham county on the 26th of March, 1849. Harriet M. R. Montmollin conveyed these premises in fee to Wm. Rose and Thomas Arkwright Dec. 29th, 1865. William Rose conveyed his interest to Thomas Arkwright, 31st March, 1870, and Thomas Arkwright conveyed to the Arkwright Cotton Factory, 25th Oct., 1872, and 12th March, 1873.

The above embraced all the written evidence of title offered by either party for the premises in dispute.

On this written evidence, together with the oral (not necessary here to allude to), under the charge of the court, the jury found for the defendants. Whereupon plaintiff made and filed a motion for a new trial on several grounds. Among them were the following :

1. Because the court erred in charging the jury that the quit-claim deed of plaintiff's lessor, Eugenia M. Nathans, if they found such a deed had been made, was in full force until disaffirmed, and that an act of affirmance was not necessary to give it validity.

2. Because the court erred in charging the jury that

the said Eugenia M. Nathans was barred ·by the quit-claim deed, if they found there was such a deed, unless within a reasonable time after coming of age, she disaffirmed the deed. That, in the opinion of the court, she was not allowed longer than seven years after her attaining her majority for this disaffirmance, and that unless she did disaffirm within seven years from the attainment of her majority, she was barred and could not recover.

3. Because the court erred in charging the jury, that if they found under the evidence this quit-claim deed, after the lapse of seven years from the time she attained her majority, she is barred notwithstanding her disaffirmance

4. Because the court erred in charging the jury as follows : " If you find under the evidence that there has been delay in this matter beyond a reasonable time, that is beyond seven years after majority, plaintiff cannot set up this excuse, that the plaintiff did not know that she had signed such a deed.   In regard to this I charge you, that if she did not know she ought to have known, if you find she was old enough to know, and I charge you that if you find she was 15 or 16 years old, she was old enough to know, and if she did not know it was her own fault."

5. Because the verdict is contrary to evidence—to law —and is illegal.   Which motion for new trial was overruled and plaintiff excepted and assigns the same as error.

The will of Levi·Sheftall, under which the lessor of plaintiff claims title to the premises in dispute, came for consideration before this court in the case of *Sheftall vs. Roberts, 30 Ga., 453.*   That was a suit to recover a portion of this "tanyard property," in which it became necessary to construe the will of the testator as to the estate that passed by the devises in this will touching this property.   Plaintiff in error insists that the decision then made settles the legal construction of this will on this point in her favor, whereas, on the part of the defendant, it is insisted that the devise to Abigail M. Hart,

she having children born and surviving her, passed to her the fee to her interest in this property, and no remainder vested in the lessor of plaintiff. That the difference is, that the devisee in the case in *30 Ga.,* died without leaving or having issue, whereas Mrs. Hart here had and left issue surviving. We can only say that we do not deem it necessary in the judgment we pronouce in this case to decide this question touching which these parties are at issue. In our view of the cause, as presented by the record, we think it best to rest our decision upon the ground presented and passed upon by the court below and assigned as error. Conceding for that purpose as the court below held, that the devises in the will of Sheftall gave a life-estate to Mrs. Abigail M. Hart, remainder to her children, we inquire whether under *all* the evidence in this case, was plaintiff entitled to recover her share in this property as one of those remaindermen. The defendants show a title from the trustee, Isaac Cohen, and Mrs. Hart, to the premises in dispute, with warranty bearing date 1st March, 1849, and they also show a quit-claim deed written on same paper, duly attested and recorded with the other deed, signed by Levi S. Hart, a son of Abigail, and also by Eugenia M. Hart (now Eugenia M. Nathans) the lessor of plaintiff in this action. This quit-claim deed, thus signed and recorded, is decisive as to the rights of this lessor unless it can be avoided or rendered null. To avoid this paper plaintiff in error assails its validity, force and legality on various grounds: 1st. That the deed was executed by the lessor, then Miss Hart, now Mrs. Nathans, when she was only sixteen years old, and being an infant her deed was *absolutely void,* and is void also for uncertainty. 2d. That when the deed was executed Mrs. Nathans had only an *expectancy,* her interest had not vested. She was only a contingent remainderman, etc. 3d. There was no consideration. 4th. That when she arrived at age, and when informed of its existence, she promptly *disaffirmed* the deed by notice to defendants, and by suit.

1. Was this quit-claim deed by an infant void? We think not. Bouvier defines a quit-claim "as a form of deed of the nature of a release." 2 Bouvier L. D., 404. Oliver, in his Conveyancing, says "it may be construed to be a bargain and sale, or any other lawful consequence by which the estate may pass and the intention of the parties be effected—the recording of the deed being equivalent to livery and seizure." See title, Quit-claim Deeds, 224. As to a consideration, one dollar is sufficient consideration, and whether it is paid or not does not affect its validity, since it is recoverable if not paid. Oliver's Conveyancing, 225-8; 61 *Ga.,* 608.

The deed of an infant is not void but voidable only. Irvine *vs.* Irvine, 9 Wallace 626; *6 Ga., 384-389.* The Code declares "the deed of an infant is *voidable* at his pleasure on majority." The making of another deed voids the first without an entry on the lands. Code, §2694. The general rule is, that an infant must avoid his or her deed in a reasonable time after attaining majority. In 12 *Ga.,* 594, *Fleming vs. Foran,* the court held that legatees could set aside an executor's purchase within a reasonable time, and that this is not settled by any fixed rule, but depends upon the exercise of the sound discretion of the court in each particular case. *In Flanders vs. Flanders, 23 Ga., 255,* the court held that a delay to set aside the sale of a negro to himself for four years by the administrator was a delay for an unreasonable time. The court says trover is barred in four years, so that they do not admit the same time to disaffirm that the statute gives to bring suit. In *Smith vs. Smith et al., 36 Ga., 189,* the court says the law gives minors until after they have attained their majority to confirm or repudiate at their election. See 6 *Ga.,* 388; 7 *Ga.,* 571. In 6 *Ga.,* 388, the court says if the land be holden *adversely* to the infant "he must enter or perform some act of revocation before suit brought."

It is not insisted in this case, that the plaintiff, Mrs. Nathans, in any way disaffirmed her deed of 1849, until she brought her first suit, October 17th, 1873, and this

was twenty years after *she attained her majority*—her birth was in 1832; in 1853 she was of age. See *Lawton & Box vs. Adams*, 29 *Ga.*, 275;9 Wall, 627–8; 17th Wendell, 119; 10 Peters, 71–4; 13 Mass., 375, bottom of page.

That a deed of an infant was voidable was declared to be law before the Code, 6 *Ga.*, 386–9; 8 *Ib.*, 68–70. In the latter case a deed made by an infant *without consideration* and induced by fraud, was decided to be voidable, *not void.*

The rule laid down by Perkins was approved by the court in Zouch *vs.* Parsons, (3 Burrows, 1794,) as follows: " All such gifts, grants or deeds, made by infants which do not take effect by delivery of his hand are void, but all gifts, grants or deeds, made by infants, by matter in deed or in writing, which do take effect by delivery of his hand, are voidable by himself and by his heirs, and by those who have his estate."

2. Concluding then from the authorities cited, and which are fully sustained in the elementary works on infancy, such as Bingham, Tyler and others, that the deed of an infant is voidable only, and not void, and may be disaffirmed on majority, the inquiry is, whether it does not bind and prove a bar to a recovery where the disaffirmance does not take place in a reasonable time.

Mrs. Nathans came of age, according to this record, 10th November, 1853. By analogy to the statute of limitations *then of force*, she had three years thereafter within which to disaffirm her quit-claim deed of first of March, 1849. Acts of 1767, Cobb Dig., p. 559; Blankenship *vs* Stout, 25 Ill., 132; Keil *vs.* Healy, 84 *Ib.*, 104.

Was she excused from disaffirming her deed because her right of action had not accrued till the death of her mother, the life tenant, in 1871? We think not. The Code fixes the *period* of disaffirming at *majority*. When an infant has executed a deed, the law, in view of his tender age, allows him the right to disaffirm it on attaining his majority, because he then is supposed to be of an age

to determine what will be to his interest touching the conveyance, but it is due to himself, to the grantee, that he should act within a reasonable time, and if he fails to do so, it will be held as valid and binding on him.   A suit was not necessary to disaffirm ; her right to do so might have been exercised before her right to bring ejectment accrued.   She could have applied to chancery for relief against this cloud upon her title, which had already vested under her theory of the case.   See Story's Equity Juris., §§692, 694, 695.   Code, §3081.

Any solemn act under seal, placed upon the records, would have been sufficient if made in the proper time after she reached majority.   Tyler on Infancy, p. 70, §31. That a reasonable time to disaffirm (as charged by the court below) is certainly not more than seven years, the Code, §2686, settles definitely:   "No prescription works against the rights of a minor during infancy, of a married woman during coverture, etc., but each of these shall have a *like number of years* to assert his *claim* or *title* to realty or personalty against the person prescribing." In failing to disaffirm within the reasonable time, and fixed by the court from analogy at seven years, we must hold that she is barred by reason of her having made this quit-claim to the premises (and which was placed on record), from claiming any interest in the property in dispute.   Nor do we think the law of this case controlled by the case referred to us by counsel, of Sims *vs.* Everett, decided by the Supreme Court of the United States at November term, 1880.   The difference between that case and this is, there the plaintiff who failed to disaffirm was under coverture, and disabled by that reason from the act of disaffirmance—the disability of coverture enabled her to postpone the act of disaffirmance to within a reasonable time after her discoverture—but there is no evidence in this record that shows Mrs. Nathans was under any such disability.

3.  Her deed is on the same sheet with her mother's and

trustee's, which conveyed in express terms the *fee simple* with warranty. She signed it in conjunction with an elder brother, (equally interested with herself), and who was of full age; it was attested by her father himself, in commission as justice of the peace. It was done at an age when she was competent to contract marriage, make a will, choose a guardian, was responsible for crimes and for torts, and had attained years of discretion, and the record of the deed or quit-claim nowhere disclosed the fact that she was a minor. Having thus executed this paper, and enabled it to be put upon record, that operated to mislead and deceive others; then to wait a period of twenty years after attaining her majority before she seeks to disaffirm it, and this after large sums of money had been expended on the premises—to hold that these purchasers who paid value should pay the penalty of her carelessness or ignorance, now offered as an excuse for her signature, would not be consistent, in our judgment, with either the law or justice of the case. In carefully examining the grounds of the alleged errors as contained in the record, we see no reason to disturb the verdict. Believing that the cause was fairly submitted and the finding is sustained both by the law and evidence, the judgment of the court is, therefore, affirmed.