21998. MORRIS v. JOHNSON.

ARGUED MARCH 12, 1963—DECIDED JUNE 11, 1963.

*Frank M. Gleason, W. D. Moon, Jr.,* for plaintiff in error.
*John E. Wiggins,* contra.

GRICE, Justice. The dismissal of a petition seeking cancellation of a deed and other relief and the overruling of demurrers to the answer to that petition are for review here. Involved are questions relating to consideration for the deed, delivery of it, fraud of the named grantee, and one question as to procedure.

The petition was filed by Mrs. J. L. Morris against Mrs. Estelle Johnson in the Superior Court of Catoosa County, Georgia. Originally the petition was in one count, and to it the defendant interposed several grounds of demurrer. Three were sustained, and error is assigned thereon.

Subsequently the petition was amended by constituting it in

six counts, the allegations of which will hereinafter be elaborated upon. To this amended petition the defendant renewed her former demurrers and interposed additional ones. The trial court sustained general demurrers to each of the six counts, and also a demurrer to a paragraph common to counts 2, 3, 4, 5 and 6, thus producing the second assignment of error.

In addition, the plaintiff complains of the overruling of her demurrers to the defendant's answer which denied the material allegations of her amended petition.

■ Although the assignment of error to the ruling on the demurrers to the original petition included all three demurrers which were sustained, the plaintiff has now expressly abandoned two of them. The assignment still insisted upon is the sustaining of the demurrer to paragraph 5 of the original petition, which asserted that the deed is void and should be canceled because no consideration was paid for it, and ordered that such paragraph be stricken.

In paragraph 5 the plaintiff alleged that the deed is "null, void and of no effect because no consideration was paid by the defendant to the plaintiff's deceased husband for the land. Said deed recites One Dollar and Other Valuable Considerations as having been paid by defendant to plaintiff's deceased husband . . . the defendant did not pay the valuable consideration referred to in said deed, and paid absolutely nothing for the property, and because said deed is wholly and completely without any consideration whatsoever, it is null, void and of no effect."

The basis of the demurrer is that these allegations, and the copy of the deed attached to the petition, show an agreement by the defendant to pay "One Dollar and Other Valuable Consideration," that her agreement to pay such sum is a sufficient consideration to make the conveyance valid, and that the nonpayment alleged does not affect the validity of the deed.

On the other hand, plaintiff contends that this paragraph alleges lack of consideration, not nonpayment of consideration. We cannot agree.

In our view this ground of demurrer was properly sustained. At the outset, it should be pointed out that, although some

counts of the amended petition allege that the parties never agreed on a consideration for the deed, neither the paragraph now under consideration nor the original petition of which it is a part does so. There is no allegation as to fraud in the procurement of the deed, thus distinguishing this situation from that in such cases as *Pittman v. Pittman,* 196 Ga. 397 (26 SE2d 764). Nor is there any allegation as to lack of capacity to execute the deed or lack of delivery.

The deed, attached to the petition, recites a consideration and the paragraph of the petition now under scrutiny quotes that recital, but states that such consideration was not paid. Under *Code* § 29-101, permitting inquiry into the consideration of deeds, the plaintiff could have rebutted the recital of consideration. But nowhere in this paragraph, or the original petition of which it is a part, does she do so. She does not here assert that the sum recited was not the consideration agreed upon or that no consideration was ever agreed upon. The fact that she does so elsewhere, in some of the counts of her amended petition, has no effect upon this portion of the petition. Portions of other counts may not be considered unless they are incorporated by reference, which was not done here. Her complaint in this paragraph is that "the defendant did not pay the valuable consideration referred to in said deed, and paid absolutely nothing for the property and because said deed is wholly and completely without any consideration whatsoever, it is null, void and of no effect." She contends that the statement "said deed is wholly and completely without any consideration whatsoever" alleges lack of consideration. However, this statement must be considered in context, not alone, and when this is done it is seen that it must refer to nonpayment. Immediately preceding it is the explanatory allegation that "the defendant *did not pay the valuable consideration referred to in the deed.*" (Emphasis ours.)

The deed and the allegations of this paragraph show that the consideration for the deed was "One Dollar and Other Valuable Considerations" and this is not rebutted. The obligation thus created was sufficient consideration for the deed. Under *Code* § 29-110, permitting denial of a deed's recital of receipt of the consideration, the plaintiff could deny that this consideration

was in fact paid. This she did. But that denial did not aid in her effort to plead lack of consideration. The mere fact that such sum was not actually paid does not render void the conveyance but creates a liability upon the purchaser which may be enforced in an action at law. This has long been the law of our State, as is manifest from the references which follow.

First, in *Nathans v. Arkwright*, 66 Ga. 179 (1a), this court held: "The recital of the payment of $1.00 as the consideration of a quit-claim deed is sufficient. That it was not actually paid does not affect the validity of the conveyance. If not paid, it was recoverable."

Subsequently, the same situation was presented in *Southern Bell Telephone &c. Co. v. Harris*, 117 Ga. 1001, 1002 (2) (44 SE 885). The grantor executed an instrument reciting "$1.00. Received of Southern Bell Telephone and Telegraph Company . . . in consideration of which I hereby . . ." This court, five justices participating, held: "Where a contract contains a recital of the payment of one dollar as its consideration, the contract is valid though the sum named was not actually paid. It creates an obligation to pay that sum, which can be enforced by the other party."

Recently, in *Harry v. Griffin*, 210 Ga. 133 (1) (78 SE2d 37), where the record shows the allegations as to consideration to be very similar to those here, this court refused cancellation of the deed. There, the deed acknowledged receipt of $2,750 as its consideration, but upon the bank's refusal to pay the check given as payment, the grantor sought to cancel the deed. He alleged that "Said purported check or no part thereof has ever been paid to plaintiff or to any one for her; and plaintiff received no consideration of any kind or character for the house and lot described in the aforementioned deed . . . and that [plaintiff] had received no valuable or good consideration of any kind or character for the house and lot described in said deed." Construing these statements to allege nonpayment of consideration, rather than lack of it, this court held: "As between the grantor and grantee, in the absence of fraud, any sum paid or contracted to be paid is sufficient consideration to make a conveyance of realty valid. [Citations, including the foregoing

decisions.] Hence, where title to realty passes by an absolute deed of conveyance, as it did in this case, the fee simple estate is not forfeited, as the plaintiff in error contends, merely because of the grantee's failure to pay the consideration for which the deed was actually executed; and this is so since the obligation to pay the purchase money may be enforced by appropriate legal action."

The holdings of those decisions and others like them we deem controlling.

The allegations here, as we must construe them on demurrer, are, purely and simply, this: there was no consideration for the deed because, although the deed recited that the named consideration had been paid, actually it had not been paid. Each assertion of no consideration goes back to that. Thus, there is a conclusion of lack of consideration which the facts alleged do not support. Under these allegations the plaintiff is not entitled to cancellation.

Therefore, we hold that this paragraph was subject to the demurrer lodged against it.

■ We now consider the rulings on the demurrers to the plaintiff's amended six-count petition.

(a) Count 1 was constituted from paragraphs 1, 2, 3, 4 and 6 of the original petition. It seeks cancellation of the deed.

This count has no vitality. Paragraphs 1 through 3 allege only residence of the parties and the plaintiff's status as widow and sole heir at law and her inheritance of the property in question. The portion of paragraph 4 remaining after express abandonment by the plaintiff of some of its allegations (nondelivery of the deed to the defendant and that she procured possession of the deed by trickery and then recorded it) recites the death of her husband on December 19, 1960, his execution on December 16, 1960, of the deed involved here and the assertion that the deed is null, void, of no effect and should be canceled. Paragraph 6 of this count merely asserts the relief to which plaintiff claims she is entitled.

The trial court properly held this count subject to general demurrer.

(b) The remaining counts adopt various paragraphs of other

counts. However, we will not attempt to set out all allegations but will refer only to those constituting the basis of the cause of action relied upon in each count.

Count 3 alleges that "said deed is wholly without consideration, in that the defendant did not pay the plaintiff any sum of money whatsoever for said land and no consideration of any description ever passed between plaintiff's deceased husband and the defendant, and because said deed is wholly without consideration it is null and void and should be canceled." It does not allege fraud, lack of capacity to execute the deed, lack of delivery of the deed, or that the parties never agreed upon a consideration.

The allegations of this count are substantially the same as those ruled upon adversely to the plaintiff in Division 1. What was said there is applicable here.

This count was properly held subject to general demurrer.

(c) Count 6 seeks to recover the fair market value of the property. It alleges that such value is $10,000, that the defendant has not paid anything for the property but contends that she owns it, although she "fraudulently procured possession of the deed thereto" and recorded it after the death of Mr. Morris.

After extracting from these allegations the conclusions of law as to fraudulent procurement of the deed, under the well established rule that general allegations of fraud raise no issue, this count provides no basis for the relief sought. Value of the land is immaterial under these allegations. It is not alleged in this count that the consideration recited in the deed was not the agreed upon consideration. Without that and without effective allegations of fraud, no basis is shown for recovery of the market value of the property.

The trial court properly sustained the general demurrer to this count.

(d) Count 2 relies upon lack of delivery of the deed to the defendant. It recites that the deed came into her possession under the circumstances which follow.

On December 16, 1960, the defendant and Mr. Morris began negotiations at the defendant's apartment for the sale of the property described in this deed. The property is worth $10,000.

The negotiations included discussion of the sales price of such land which the defendant wanted to purchase and Mr. Morris wanted to sell, but they were unable to agree on a fixed amount. They agreed to continue discussion of price at a later time, to meet in the future and agree upon the price before the sale, after which it would be considered completed and the purchase money paid.

Mr. Morris then went to a named title company, had this deed prepared and signed it before a witness and a notary public. The defendant was not present, and while the deed recites that it was signed, sealed and delivered to her in the presence of such witness and notary public, such is not true. It was not delivered to her in their presence, there was no actual physical delivery of it to her on this occasion or on any other occasion, and it was never delivered to her.

After Mr. Morris signed the deed, he returned to the defendant's apartment and they resumed discussion as to the amount of the purchase price, but at no time did they ever agree on or set a price for this property. Being unable to agree on price, they decided to discuss the price in the future. They never held any further discussions because Mr. Morris died shortly thereafter and before they ever agreed on the consideration to be paid for the property.

On the same day, December 16, 1960, Mr. Morris left the deed with the defendant as his bailee, for safekeeping, to be held by her as his agent until the next discussion which they had agreed to hold in order to set the purchase price of such property. The defendant was holding this deed from December 16, 1960, until December 19, 1960, as bailee and agent for Mr. Morris, awaiting their further negotiations on the purchase price.

On December 19, 1960, Mr. Morris suddenly died. The defendant learned of this, recorded the deed and then claimed the property as her own, claiming for the first time that this deed had been delivered to her.

Because of the above facts plaintiff contends that no agreement was ever reached as to the sale of the property and the deed was never delivered to the defendant but was merely left with her as Mr. Morris' bailee and agent, for safekeeping pend-

ing their further negotiations. She urges that it therefore conveyed no title and should be canceled.

In support of her general demurrer to those allegations, the defendant contends that the delivery of the deed to her under the foregoing circumstances was an absolute delivery, or at least an attempted delivery in escrow, and that in either event title to the property described in the deed vested in her instantly, divested of all parol conditions.

After considering the reasons given in support of these contentions and examining the authorities bearing upon the question, we conclude that this count alleges lack of delivery of the deed. It is significant that no third party is involved here.

Although a presumption of delivery is raised by such factors as possession of the deed by the grantee, *Code* § 29-105, a recital of delivery in the deed's attestation clause, *Fuller v. Fuller,* 211 Ga. 201 (84 SE2d 665), and reservation of a life estate by the grantor, *Keesee v. Collum,* 208 Ga. 382 (67 SE2d 120), such presumption may be rebutted by evidence that in fact the deed had not been delivered. *Allen v. Bemis,* 193 Ga. 556 (19 SE2d 516); *Stinson v. Daniel,* 193 Ga. 844 (20 SE2d 257); *Fuller v. Fuller,* 211 Ga. 201, supra; *Keesee v. Collum,* 208 Ga. 382, supra.

The criterion of delivery, expressed in 7 Thompson, Real Property, § 4113, pp. 562, 564, and quoted approvingly by this court in *Stinson v. Daniel,* 193 Ga. 844, 850-851, supra, is: "The question of the completed and effectual delivery of a deed is one of intent of the grantor, and this intent to irretrievably part with control of the deed is to be gathered from the circumstances under which the delivery is made," and "The true test of delivery of a deed of conveyance is whether or not the grantor intended to reserve to himself the locus penitentiae." Locus penitentiae is defined in Black, Law Dictionary (4th ed.), p. 1090, as ". . . an opportunity for changing one's mind; an opportunity to undo what one has done . . . a chance to withdraw from a contemplated bargain or contract before it results in a definite contractual liability; a right to withdraw from an incompleted transaction . . ."

Powell, Actions for Land (Rev. Ed.), p. 181, states the rule aptly: "What is delivery depends not only on act, but also on

intent. It requires more than a physical passing from the hands of the grantor to the grantee; an intention to surrender dominion must be present."

We find no case in Georgia involving the exact facts alleged in the instant case. The nearest is *Keesee v. Collum,* 208 Ga. 382, supra, which is similar in principle.

In the *Keesee* case there was evidence as follows. A father executed a deed to his daughter in 1949. At the time of the execution the daughter was not present, no delivery was made, and the father made no statement of his intention as to delivery but took the deed and placed it in his trunk. Later, in 1950, the father had his four children assemble at his home. He gave a son the key to the trunk and had him bring from it a tin box containing money and envelopes with deeds and papers. The father divided the money into four equal parts and handed the daughter the envelope with the deed previously executed to her. Then, before he had done anything with the other deeds, he stated, "I will fix the rest tomorrow, I have got to lay down . . . I will finish later . . . put them all up." The son picked up the money and envelopes, including the one handed to the daughter by the father, and put them back in the father's trunk where they remained until after his death, when the son as one of the administrators took them out and delivered the daughter's deed to her.

In sustaining an attack on the delivery of that deed to the daughter by the father, this court stated: "Even though the evidence authorized a finding that at the time the grantor was preparing a division of his property, and [the daughter] at one time had physical possession of the deed to her for a few minutes, the jury, under the facts and circumstances appearing, were authorized to find that the maker did not intend to surrender dominion over the deed . . . The delivery of a deed is complete as against the maker only when it is in the hands of or in the power of the grantee or someone authorized to act for him, with the consent of the grantor, and with intention that the grantee hold it as a muniment of title. *O'Neal v. Brown,* 67 Ga. 707 (2). But a mere manual delivery to the grantee is not sufficient, where the intention of the grantor to surrender domin-

ion is not present. *Story v. Brown,* 98 Ga. 570 (3) (25 SE 582);
*Allen v. Bemis,* 193 Ga. 556 (2), 563 (19 SE2d 516)."

We think that under the principle of the *Keesee* case and
the authorities cited therein, the instant petition alleges that the
grantor had no intent to irretrievably surrender dominion of this
deed and therefore an absolute delivery is negatived.

But it is contended that if the facts alleged do not show an
absolute delivery, they show an attempted delivery in escrow,
i.e., a delivery on condition, which, when made to the grantee,
immediately passes title.

We cannot agree. The plaintiff does not allege a delivery on
condition. On the contrary she alleges that the parties had
never reached any agreement for the sale of the property and
that the deed was left with the defendant as Mr. Morris' bailee
and agent, for safekeeping pending their further negotiations.
In the situation alleged no contract had been agreed upon. The
parties were still negotiating. They might never reach agree-
ment. This is vastly different from an attempt to deliver "on
certain conditions," as an escrow is described in *Code* § 29-105.
In an escrow or attempted escrow situation there has been a
meeting of the minds, an agreement as to the terms, conditions,
and consideration of the contract, but its effectiveness—or deliv-
ery—is delayed until performance of some condition precedent
by the grantee or another or the happening of some event.

The following decisions, relied upon by the defendant, are
not applicable: *Jordan v. Pollock,* 14 Ga. 145; *Duncan v. Pope,*
47 Ga. 445; *Mays v. Shields,* 117 Ga. 814 (45 SE 68); and *Mor-
gan v. Wolpert,* 164 Ga. 462 (139 SE 15). None of these cases
involved an incomplete agreement between the parties to the
deed. Each involved either a voluntary deed or one made pur-
suant to a completed agreement of bargain and sale. All except
the *Jordan* case involved an attempted escrow delivery directly
to the grantee or his attorney.

In the *Jordan* case the issue of delivery involved the sufficiency
of the evidence. There, a father had executed voluntary deeds
to several of his children.

From the evidence it appeared that the unresolved factor was
*when* to make the conveyance effectual, not the very *terms* of

the conveyance as in the case at bar. The court stated that prima facie evidence of delivery was fairly inferred from the words and acts of the grantor, taken with the subsequent possession of the land in question by the grantee. In this connection it referred to testimony that after all the deeds had been executed, the grantor told the grantee, "To take them, and put them away until he called for them, for he was not ready to turn over the property they conveyed at that time, as the crop was not housed," and to testimony that showed that the grantee was, after this, in possession of the land. It then stated that "Here, certainly, was a delivery of these deeds." In the instant case, the facts alleged do not involve any such circumstances.

The court next ruled adversely to the contention that if there was no absolute delivery there was an escrow delivery. It provided two bases for that ruling. One was that no conditions were specified by the grantor as to when the delivery was to take effect. The other was that "a deed can never be delivered to the grantee himself, as an *escrow;* but if intended to operate as such, must be delivered to a third person for him."

The *Duncan* and *Morgan* cases involved deeds made pursuant to completed agreements. The holding in each was that a grantor can not deliver a deed to a grantee or his attorney as escrow, and that when such is attempted, there is a complete delivery, the grantee taking title immediately, divested of all parol conditions.

The *Mays* case held that "A deed cannot be delivered to the grantee in escrow, nor can parol evidence be offered to contradict the recitals that title has been conveyed, and that the deed is really held by him for some purpose not therein expressed." (Headnote 4.) In that case, the facts show that the parties had agreed on the terms of sale and a portion of the price had been paid. According to the grantor he had delivered it to a third party to be delivered to the grantee when he paid the balance of the purchase price. However, there was other evidence that the grantor had delivered the deed to the grantee. Thus, since the situation under consideration by the court was an attempted delivery upon condition, "some purpose" in the quoted headnote can only refer to that particular condition. To construe the

headnote as meaning that parol evidence can not be offered to show that the grantee holds the deed for *any* purpose other than conveyance of title is to say that the court's language was obiter.

Furthermore, in that case the issue was between the grantor and a third party, not the grantee as here. The deed had been recorded and the grantor knew it. The grantee was in possession of the land and had been for some time previous to the execution of the deed. This court held that the trial court should have charged on the issue of ratification of delivery by the grantor and the issue of his estoppel from denying title of one who purchased on the faith of the record.

None of those cases involved the situation here, where it is alleged that there was never a completed contract of sale and that the maker of the deed left it with the named grantee as his bailee and agent for safekeeping, pending their further negotiations upon the subject.

The legal consequences of the allegations in the instant case are further apparent from the following statements.

"The rule that where a deed is delivered to the grantee but upon condition, the delivery is good but the condition is a nullity, has no application where the circumstances negative any intention to deliver the deed even conditionally. Thus, where, in giving the grantee possession of a deed, the intention is merely that he examine the deed, or transmit it to a third person for a particular purpose, where a deed is given to the grantee for safekeeping or to aid in the transfer of title to another prospective purchaser, there is no legal delivery of the instrument which will pass title to the property . . ." 16 Am. Jur. 507-508, Deeds, § 124.

Also, ". . . so, where a deed is deposited with the grantee for a purpose other than a delivery, it does not operate as a conveyance; as when he has taken it as agent for the grantor for a special purpose, or has taken it for the purpose of examination, or has taken possession of it without the consent of the grantor, or has procured it by force, fraud, or mistake . . . The handing of a deed to a grantee with the intention of the parties that the deed is not to become operative immediately,

or for retention by him pending his determination to accept it, does not constitute delivery." 26 CJS 688, Deeds, § 42.

See also, annotation, "Conclusiveness of Manual Delivery of Deed to Grantee as an Effective Legal Delivery," particularly subtopic "Delivery to Grantee for Safekeeping," 56 ALR 746, 752; 141 ALR 305, 311; 7 Thompson, Real Property (Perm. Ed.), §§ 4145, 4146, pp. 610, 611; 4 Tiffany, Real Property (3d Ed.), §§ 1034, 1035, pp. 199-207.

We consider that this count effectively alleges that the plaintiff's deceased husband never intended to irretrievably surrender dominion over the deed in question and hence alleges its lack of delivery. The general demurrer directed to it should not have been sustained.

(e)  Count 4 seeks cancellation of the deed upon the ground of fraudulent conversion by the defendant as bailee.

This count repeats in condensed form the allegations of count 2, ruled upon in Division 2 (d), that there had been no delivery of the deed to the defendant, but that she held the deed for safekeeping as Mr. Morris' bailee pending their further negotiations as to the purchase price for the property. It further alleges that she, upon learning of his death, recorded the deed although she knew that it had never been delivered to her and that she held it as bailee only.

For the same reasons given in Division 2(d), we deem that the comparable allegations in this count also allege lack of delivery. Under these allegations the deed belonged to Mr. Morris, not to the defendant, and she had no right to record it as her own.

This count sets forth a cause of action for fraudulent conversion, and the general demurrer thereto should not have been sustained.

(f)  Count 5 asserts that the deed had never been delivered because no agreement had ever been reached as to the purchase price and no contract had ever been made.

As against general demurrer these allegations stand. In the status alleged, the deed was a mere piece of paper, creating no rights or duties, and hence it was not subject matter for delivery. Sustaining of the demurrer to this count was erroneous.

(g)  This same ruling also sustained the defendant's ground 5(a) of demurrer to a paragraph common to counts 2, 3, 4, 5 and 6 which alleged the plaintiff's dependence for her year's support upon the property described in the deed.  The sustaining of this ground of demurrer, while assigned as error along with the sustaining of demurrers to each of the six counts as a whole, has not been argued or insisted upon in any way in this court, and the assignment of error thereon is deemed abandoned.

■  Finally, we consider the overruling of the plaintiff's demurrers to the defendant's second answer.

The defendant filed a separate answer to the plaintiff's amended petition, rather than amending her answer to the original petition.  Thereupon, the plaintiff demurred generally and specially to such separate answer.  The trial court overruled the general demurrers and did not pass upon the special demurrers.

(a)  The first overruled ground was that this answer did not constitute a defense to the plaintiff's petition, as amended, or any count thereof.  This ground was not argued in any manner in this court and is deemed abandoned.

(b)  The second and third grounds raise a procedural question.  They urge that the defendant was not authorized or permitted by law to file a separate answer to an amended petition.  In support of these grounds the plaintiff takes the position that while the defendant could have amended her answer by complying with *Code* § 81-1310, which requires an affidavit that the party did not omit the new facts set out in the amended answer for the purpose of delay, she did not do so, but instead filed a separate answer, without any order allowing it as an amended answer.

As we evaluate it, this position is not tenable in view of *Code* § 81-1312, which provides:  "An amendment to a petition, or plea, or answer, which materially changes the cause of action or defense, opens the petition, plea, or answer, as amended, to demurrer or plea.  The opposite party shall be allowed a reasonable time *for answering such amendment.*  An immaterial amendment shall not so open the petition or other pleading, and need not be answered at all, or shall be answered instanter." (Emphasis ours.)

The plaintiff's amendment recast her original petition into six counts by introducing several new attacks upon the deed held by the defendant. It materially changed the cause of action.

In such situation the above Code section provides that the opposite party "shall be allowed a reasonable time for *answering* such amendment." (Emphasis ours.) The next sentence, dealing with an immaterial amendment, twice mentions "answered." But nowhere in this section, or in any other, is there any requirement that the privilege of answering an amended pleading be exercised only by means of an amendment to the original answer.

These two grounds of demurrer were properly overruled.

For reasons stated in Division 1, the judgment sustaining the ground of demurrer directed to paragraph 5 of the original petition is affirmed.

For reasons stated in Division 2, the portion of the judgment sustaining the grounds of demurrer directed to counts 1, 3 and 6 of the amended petition is affirmed, and the portion sustaining the grounds directed to counts 2, 4 and 5 of such petition is reversed.

For reasons stated in Division 3, the judgment overruling grounds of demurrer to the separate answer is affirmed.

*Judgment affirmed in part; reversed in part. All the Justices concur, except Head, P. J., Almand and Mobley, JJ., who dissent from the rulings in Divisions 2(d), 2(e) and 2(f), and Quillian, J., who dissents from the rulings in Divisions 1 and 2(b) and, as to Division 2(d), concurs in the result but not for the reasons stated therein.*

QUILLIAN, Justice, concurring in part and dissenting in part. I concur in the judgment of reversal for the sole reason that, as shown in each part of the petition, that is, the original petition and several counts added by way of amendment, there was no consideration for the deed, the validity of which is discussed in the majority opinion. A consideration is essential to the validity of a deed; to deliver an instrument described as a deed but having no consideration, with greatest solemnity, is to perform a vain act; for, the paper is not a legal document, is incomplete and the delivery, in such circumstances, can not be for the purpose of giving it effect. In my opinion, the delivery of the

deed was not for any other reason disclosed by the record insufficient or ineffectual. Hence, I concur only with the judgment rendered in Division 2 (d).

I dissent from the conclusion reached in Divisions 1 and 2 (b) of the majority opinion that the petition did not show that the deed attacked was without consideration and all that is said in those divisions. The rule frequently referred to in the opinions of this court is that the consideration of a deed may be inquired into where it is merely recited in a deed, but where the consideration of a deed stated in the instrument is a covenant, that is one of the express terms of the deed, it can not, in the guise of inquiring into the same under the provisions of *Code* § 29-110, be proved by parol evidence to be of a different nature, enlarged or diminished. *Wellmaker v. Wheatley*, 123 Ga. 201 (2) (51 SE 436); *Young v. Young*, 150 Ga. 515 (1) (104 SE 149). The rule is not applicable, however, when the evidence is offered to show a total want or failure of the consideration for which the deed is made. *Pittman v. Pittman*, 196 Ga. 397, 405-406 (26 SE2d 764); *Toney v. Toney*, 196 Ga. 666 (3) (27 SE2d 296). As held in the *Toney* case: "A deed that recites on its face a consideration of $10 'and other valuable consideration in hand paid' at the time of its execution is not a voluntary conveyance, but presumptively is valid as based on an actual valuable consideration. Thus, on a petition by the grantors for cancellation and other equitable relief, attacking such a deed as without consideration, while an inquiry into the actual consideration is not precluded, the burden is on the grantors to show that none in fact existed." Moreover, "it matters not whether a fraudulent intention existed at the time the conveyance was made. 'Constructive trusts are such as are raised by equity in respect of property which had been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it.' *O'Neal v. O'Neal*, 176 Ga. 418 (2) (168 SE 262); 26 RCL 1232, § 78; 3 Scott on Trusts, 2317, § 462.2." *Pittman v. Pittman*, 196 Ga. 397, 405, supra.

In the present case, however, the consideration of the deed attacked is stated in the deed as a mere recital. So, under any

view of the law, between the parties to the deed, the defendant grantee and the plaintiff who stands in the stead of her deceased husband, the grantor, inquiry may be made as to the consideration of the deed. *Stonecypher v. Ga. Power Co.*, 183 Ga. 498, 504 (3) (189 SE 13); *Toney v. Toney*, 196 Ga. 666, supra.

With all deference to my learned colleagues, the cases cited in the majority opinion which hold that where the consideration of a deed is not paid, unless the grantee be insolvent, the remedy of the grantor is to recover the amount of the consideration expressed in the deed and the mere failure to pay the actual consideration as agreed by the terms of the deed is not a ground upon which the conveyance may be canceled, *Nathans v. Arkwright*, 66 Ga. 179 (1-a); *Harry v. Griffin*, 210 Ga. 133 (1) (78 SE2d 37), has not the slightest relation to a situation in which there is, as alleged by the petition in the instant case, no consideration for the deed. It seems obvious to me that the collection of the consideration of a deed that had none can not be accomplished.

It should be remembered that the petition contains the allegations:

*Original petition, Par. 5.* "That irrespective of the manner in which defendant acquired possession of said deed, the same is null, void and of no effect because no consideration was paid by the defendant to the plaintiff's deceased husband for the land. Said deed recites One Dollar and Other Valuable Considerations as having been paid by defendant to plaintiff's deceased husband. The defendant states that she has paid for the property a large sum of money and made this statement to plaintiff's attorneys but she refuses to show the check with which she made the payment or produce any receipt to show payment and plaintiff alleges that the defendant did not pay the valuable consideration referred to in said deed, and *paid absolutely nothing for the property,* and because said deed is *wholly and completely without any consideration whatsoever,* it is null, void and of no effect." (Emphasis supplied.)

*Count 2, Par. 5 (d).* "That after plaintiff's deceased husband signed such deed, he went back to the defendant's apartment and they resumed their discussion as to the amount of the purchase

price. At no time did they ever agree on a price for such land, nor did they set the purchase price. Being unable to agree on price, they decided to discuss the price in the future. They never held any further discussions because plaintiff's husband died a short time thereafter, and before they ever agreed on such consideration to be paid for such property."

*Count 3, Par. 2.* "That said deed is wholly without consideration, in that the defendant did not pay the plaintiff any sum of money whatsoever for said land and no consideration of any description ever passed between plaintiff's deceased husband and the defendant, and because said deed is wholly without consideration it is null and void and should be canceled."

The original petition and each of the counts to which there is reference, under a familiar rule of pleading, stands as a separate unit of pleadings, as individual and segregated from other parts of the petition as different petitions concerning the same subject matter, none of the averments of any count being made a part of another by reference. But, in my opinion, the total want of consideration for the deed is made to plainly appear in the original petition and each of the counts, parts of which are quoted above. So, I am firm in the opinion that the allegations of the petition sufficiently showed there was no consideration for the deed we consider in the present case. The want of such consideration is, under the statutes of this State and the previous holdings of this court, cause to cancel the deed. The cases of other jurisdictions, where the statutory law and the interpretation of statutes is different from ours, furnish no valid basis of a contrary view from that expressed here. The majority opinion in the case sub judice, though that of scholarly Justices equally as conscientious as I in the expression of their conclusions, is not in line with the well settled rule, so vital in the enforcement of sacred property rights, that, as simply stated in *Code* § 29-101, a consideration is essential to a deed.

There is no statute of the State or holding of this court which relegates the grantor to the remedy of seeking to recover the consideration stated in the deed where in fact there was no actual consideration for the same. To rule that in any event, as the court has in this case, that the collection of consideration ex-

pressed in the deed is the grantor's only remedy, when in fact there was no consideration, is in effect to completely nullify the rule that permits inquiry into the consideration of deeds. There is no logical reason to inquire into the want of consideration in a deed, if the only remedy the grantor has is to collect the consideration expressed in the deed, although the recitation as to the consideration be false.