### BAKER & SWAIN *et al. v.* MASSENGALE.

83  137
102  258

1. When the existence of a landlord's lien for supplies is directly in issue, a writing attested by a subscribing witness and purporting to create such a lien, is not admissible in evidence without proof by such witness of its execution, or duly accounting for his non-production. That the witness is not in the county and the maker of the instrument knows not where he is, will not (without more) lay the foundation for receiving the evidence of the maker himself to the fact of execution.

2. Unless one making advances and giving credit upon the faith and belief that he has a lien for the price really has it, mere notice to others that he is so acting or has so acted, will not vitiate or postpone an otherwise valid mortgage taken by them after receiving such notice.

April 29, 1889.

Liens. Evidence. Witness. Notice. Mortgages. *Bona fides.* Before Judge LUMPKIN. Warren superior court. April term, 1888.

This is a contest over a fund brought into court under rule against the sheriff at the instance of T. E. Massengale. The contestants for the fund were as follows: T. E. Massengale claimed under the foreclosure of a lien for supplies furnished by him to F. F. Armstrong, in 1885, to make a crop, under the following agreement:

"STATE OF GEORGIA, Warren county.

"This agreement made and executed this the thirty-first day of January, 1885, between V. A. Johnson, landlord, and F. F. Armstrong, doth witness that, in consideration of the said V. A. Johnson, landlord, furnishing to the said F. F. Armstrong four hundred dollars money, farming utensils or other article necessary to make crops, clothing, medicines and articles of necessity to supply a family, or any of said articles during the year 1885, the said F. F. Armstrong hereby obligates himself to pay the same the first day of October, 1885. And in order to secure the said V. A. Johnson, landlord, or assigns, in making the said advances, I, the said F. F. Armstrong, hereby create and give to the said V. A. Johnson, landlord, and his assigns, a full and complete lien on my entire crop of corn, cotton and all other produce grown or to be grown by me during the year 1885 on land in said county whereon I farm during said year. And I further affirm that this is the only lien given by me on said crop. I agree, that should this lien have to be enforced by the law, to pay all attorney's fees and

court costs. In testimony of all of which, I have hereto set my hand and seal, this the day and year first above written.

"Executed in presence of O. H. ROGERS." F. F. ARMSTRONG. [L. S.]

"Georgia, Warren county.

"I, V. A. Johnson, landlord, in consideration that T. E. Massengale, merchant, will furnish the articles agreed to be furnished by me in the within lien to the said F F. Armstrong, hereby transfer and assign to him all my rights secured by the said lien. This 31st day of January, 1885. Excepting my one-half of the crop.

V. A. JOHNSON."

W. J. Walker claimed under a justice's court execution dated January 30th, 1883, in his favor against F. F. Armstrong and others. Baker & Swain claimed under the foreclosure of a mortgage dated August 28th, 1885, given to them by F. F. Armstrong on his crops raised that year; and also as transferees of another mortgage made by Armstrong to A. M. Massengale on June 9th, 1885, covering one-half of crop raised that year.

On the trial, Armstrong testified that he signed the agreement above set out between himself and Johnson, and that O. H. Rogers, the attesting witness, did not live in the county, and witness did not know where he was. The following paper was put in evidence by Baker & Swain. It bears no date:

"STATE OF GEORGIA, Warren county.

"This contract made and entered into by V. A. Johnson and F. F. Armstrong for the purpose of carrying on a joint farm on lands of V. A. Johnson, is as follows: V. A. Johnson, on his part, agrees to furnish the land and stock and to feed the stock; also to furnish farming utensils and half of the guanos used on the farm. F. F Armstrong, on his part, agrees to furnish all the labor and to give his personal attention to cultivating and harvesting the crops, and to furnish half of the guano used on the place farmed by himself and V. A. Johnson. It is further agreed by both parties to this contract that any expense incurred jointly shall be paid out of the crops before any division, and that no expense shall attach to the crop unless agreed to by both parties, and after such joint crop to divide the crops equally, each taking half of all the crops raised on the place, V. A. Johnson to receive his half at home and F. F. Armstrong to receive his half at same place. V. A. JOHNSON. F. F. ARMSTRONG."

Armstrong further testified that the first contract he made with Johnson was lost, and in the spring he signed another, but afterwards the first one was found, and they destroyed one, and the contract now in court is the last one they signed, which was in March; that when he gave Baker & Swain their mortgage, he told Swain that Massengale had a landlord's lien, and Swain agreed in writing to protect him against it; that he also told A. M. Massengale the same thing when he gave him his mortgage; that the money in court is proceeds of cotton raised by him in 1885 on land of V. A. Johnson, which cotton is the same upon which Massengale had a landlord's lien and Baker & Swain a mortgage. T. E. Massengale testified that he furnished Armstrong the goods on the transferred landlord's lien in good faith that there was no relation between him and Johnson but landlord and tenant; that he knew nothing about the paper introduced in evidence purporting to be a contract between Johnson and Armstrong, and never saw or heard of it until after the pendency of this litigation; that he saw a mortgage that Baker & Swain had prepared for Armstrong to sign, and which excepted a claim in witness's favor for $200, and told Swain that $200 would not half pay his claim, this being about September 1st, 1885; and that the mortgage was then signed up.

James P. Swain testified that he was a member of the firm of Baker & Swain, and a son-in-law of V. A. Johnson; that at the time Armstrong gave the mortgage to Baker & Swain, he told witness that T. A. Massengale had a lien on his crop, but did not say it was a landlord's lien, and witness thought it was a mortgage; that the first mortgage written out for Baker & Swain was never signed, probably on account of some defect about it, and a new one was written because the date in the first one would have to be changed

if it were used; that this unsigned mortgage recited that Massengale had a claim on the crop for $200; that witness wrote the contract in evidence between V. A. Johnson and F. F. Armstrong, and it was signed early in January, 1885; that this contract was lost for a time, and in the spring or summer witness wrote another as near like it as he could, and this other was signed and was subsequently destroyed upon finding the first one; that they were both alike, and the one in evidence was the first one signed up. Upon cross-examination, this witness said that Armstrong gave the mortgage in favor of Baker & Swain reluctantly, told witness that T. E. Massengale had a claim or lien on his crop, and witness finally promised to protect him in order to obtain the mortgage; that after the first mortgage was written, witness showed it to T. E. Massengale, who said that he should have excepted his lien for $400 instead of $200; and that witness gave Armstrong a written obligation to protect him on account of his giving a second paper on his credit. On being recalled, this witness denied that Armstrong told him that Massengale had a landlord's lien, and said he thought Massengale had a mortgage, but did not know the amount of it; did not know what Massengale claimed against Armstrong until Massengale told him in September, 1885; Baker & Swain furnished goods all through the year and took their mortgage to save themselves. Witness told Massengale, on the day before the trial, that he lost the original contract between Johnson and Armstrong, had another executed and subsequently found the lost one; could not swear positively whether the contract in court was the original or not.

A. M. Massengale testified that he did not remember whether Armstrong gave him notice of T. E. Massengale's lien or not; that when he took the mortgage,

Armstrong had got part of the goods, and got balance afterwards; and that as Armstong was running six plows, it is not unlikely witness concluded that his crop would pay T. E. Massengale and himself.

The case was submitted to a jury, and they found in favor of T. E. Massengale. The other claimants moved for a new trial on the following grounds:

(1) The verdict is contrary to law and evidence.

(2) The court allowed Armstrong to testify to the execution of the lien transferred to Massengale; the objection being that such execution should be proved by Rogers, who, as Armstrong testified, was not in the county and he did not know where he was.

(3) The court, after instructing the jury that the contract without date introduced in evidence and claimed to represent the contract between Johnson and Armstrong, did not constitute the relation of landlord and tenant, erred in charging the jury as follows: "Suppose you should believe that they were really not landlord and tenant but Massengale honestly thought so and then furnished the goods, I charge you, if that was the case, Massengale would be entitled to preference over the other creditors, if they took mortgages and at the time had actual notice that Massengale was furnishing goods under a landlord's lien, as he believed it to be, or if the circumstances brought to the notice of these parties were sufficient to put them on inquiry as to the nature of the dealings between Massengale and Armstrong."

(4) The court, after correctly charging that if the relation of landlord and tenant did not exist between Johnson and Armstrong, Walker's claim of older date would be superior to Massengale's, erred in adding these words: "But if the relation of landlord and tenant did exist, and Massengale took a transfer of the lien, his lien is superior to Walker's"; there being no evidence to authorize such charge.

The motion was overruled, and movants excepted.

JAMES WHITEHEAD, for plaintiffs in error.

THOMAS E. WATSON and H. T. LEWIS, by HARRISON & PEEPLES, *contra*.

BLECKLEY, Chief Justice.

1. Money being in court for distribution, the proceeds of Armstrong's property, it was claimed by Massengale under a landlord's lien transferred to him by Johnson, the lien being given for supplies to make a crop. It was also claimed by other parties.—a part of it under a judgment older than the lien, and a part on mortgages younger than the lien. The writing purporting to create the landlord's lien was attested by a subscribing witness who was not produced or otherwise accounted for, except that Armstrong, the maker of the lien, testified the witness was not in the county, and that he knew not where he was. What Massengale knew on the subject did not appear, nor did it appear that any diligence whatever had been used to find the witness or procure his testimony. The court admitted the evidence of Armstrong to prove the execution of the writing. This, we think, was error. The lien was not incidentally, but directly in issue. This being so, the subscribing witness should have been produced or adequately accounted for. 1 Greenleaf Ev. §§557, 569; Code, §3837; *Barron v. Walker*, 80 *Ga.* 121. As to proper diligence to procure the evidence of the subscribing witness, see 1 Greenleaf Ev. §572; and that absence from the county does not put the witness beyond the jurisdiction of the court, see *Harris v. Cannon*, 6 *Ga.* 389. For the purpose of taking evidence the superior court of any county has jurisdiction throughout the State. The writing being improperly admitted in evidence, the whole trial was vitiated.

2. We however rule upon one element of the charge to the jury, the import of which and of our opinion upon it will appear from the reporter's statement and the second head-note. We say nothing as to whether Massengale had a landlord's lien or not, but leave the whole question open for a second trial.

*Judgment reversed.*