## McKINNEY *et al. vs.* BURNS *et al.*

Where a son-in-law executes a deed to his father-in-law, to a lot of land, and
at the same time releases a debt to him, provided he will convey the title in
trust to the wife and children of the grantor, and to enable him to do so,
Equity will either enforce a specific performance of the agreement—it not
being denied by the grantor—or decree a resulting trust to the land in favor
of the grantor.

In Equity, in Floyd Superior Court.    Tried before Judge
HAMMOND, at the July Term, 1860.

This was a bill in equity, filed by Henry Burns and his
wife, Cynthia Burns, formerly Cynthia McKinney, and their
minor children, suing by the said Henry Burns, as their father
and next friend, against John McKinney and Charles McKin-
ney, administrators of Samuel McKinney, deceased.

The bill alleges: That, in the year 1849, Henry Burns
purchased and paid for, out of his own funds, the undivided
half of lot of land number 96, in the fifth district of the
fourth section of originally Cherokee, now Floyd county, ob-
tained a deed for the same, went into the possession thereof,
and has so remained, using and receiving the profits of the
land up to the time of filing the bill; that, in the early part
of the year 1850, being in need of money, he called on Sam-
uel McKinney, his father-in-law, for the sum of $150.00,
which the said Burns, in the year 1836, had deposited with
the said Samuel McKinney, to aid in the purchase of, and
payment for, a negro girl for the said Cynthia, the daughter
of Samuel McKinney, and wife of said Burns; that the said
Samuel McKinney agreed to pay the said sum of $150.00,
provided Burns would make a deed to, and vest the title to
said land in the said Samuel McKinney, so as to enable him
to settle the same upon the said Cynthia and her children;
that said agreement was made and carried out by the
said Burns, making the deed to said Samuel McKinney, and
said Samuel agreeing to make a conveyance of the land in trust
for the wife and children of the said Burns; that there was
no other cause, or consideration, or inducement for the deed
made by Burns to McKinney, except that hereinbefore
stated; that said half lot of land is now, and was then, worth
four hundred dollars in cash, and that the said Samuel Mc-

**IMPLIED TRUST.** "When an attorney for defendant in fi. fa. pur-
chased his client's land at sheriff's sale, taking title to himself, such
stands affected with a trust in favor of the client by operation of law.
* * * * "When title to realty is thus passed into the hands of an
attorney, and a parol agreement is had by the defendant and his chil-
dren that the attorney shall make a deed to two sons of the defendant,
so as to enable them to raise money by encumbering or selling a por-
tion of the property sold, for the purpose of reimbursing the attorney

Kinney died on the 10th day of March, 1858, without ever having made a conveyance of said land in trust for the sole and separate use of the said Cynthia and her children, as he had agreed to do; that the said defendants obtained letters of administration on the estate of said Samuel McKinney, and also obtained leave to sell, and actually advertised said land for sale, and will sell the same on the first Tuesday in January, 1856, unless restrained by process from a Court of Chancery.

The bill prays an injunction, restraining the defendants from selling the land; also a discovery of the facts charged; and, also, a specific performance of the agreement to convey the land in trust as set forth in the bill; and, also, for general relief.

The answers admit all the charges and allegations in the bill, except the charge that Burns had deposited $150.00 with Samuel McKinney in 1836, to aid in buying a negro girl for Mrs. Burns. This charge they ignore. The answers also aver a disbelief of the charge in the bill as to the agreement by Samuel McKinney, to convey said land in trust for the sole and separate use of Mrs. Burns and her children, and state that, according to the knowledge, information and belief of the defendants, the facts really were as follows: That Burns, being in need of money, and his property about to be sold, applied to Samuel McKinney for aid, and that such aid was furnished, and that the deed from Burns to Samuel McKinney was taken to secure the said Samuel, and at the same time to secure a home for his daughter, the said Cynthia, and her children; that Samuel McKinney, no doubt, intended to convey said land in trust as charged in the bill, and may have, and doubtless did, avow such a purpose in the presence and hearing of Burns, but that there was no stipulation or agreement to do so.

In addition to the bill and answers, the following testimony was adduced upon the trial of the case, to wit:

Shadrach Farmer, testified: That he wrote and witnessed the deed from Henry Burns to Samuel McKinney for land in controversy; that John McKinney, one of the defendants, was present, and told witness that his father, the said Samuel, wanted witness also to write a deed from the said Samuel to Mrs. Burns and her children, but this last deed was not written because Samuel McKinney was not present to exe-

the amount he paid for the benefit of the defendant, with the understanding among all the parties that after such payment is so made, the property shall be held by the sons for the benefit of the defendant and his children during his life, and, after his death, shall continue to be the home of his daughters as long as they or either of them remain single, and then divided among the children, and when this

cute it; there was no money paid or note given to Burns for his deed, and it was understood at the time that, in consideration of the deed from Burns, Samuel McKinney was to re-execute to Burns' wife and children.

Daniel Lowery, testified: That he knew the land, and that it was worth in 1850, and at the time of trial, the sum of $400.00, and that John McKinney, one of the defendants, said that his father, Samuel McKinney, was to make a deed for the land to Burns' wife and children.

John J. Fisher, testified: That John McKinney, one of the defendants, said both before and after the execution of the deed from Burns, that, in the arrangement, Samuel McKinney was to secure the land to Mrs. Burns and her children, and after the death of Samuel McKinney, the said John McKinney expressed regret that the arrangement was not completed.

Theophilus Little, testified: That Burns paid the first purchase money for the land, for witness was his security for it; that John McKinney has frequently told witness that Samuel McKinney was to secure the land to Burns' wife and children, so that they should never be disturbed in its enjoyment, if Burns would make him a deed, and that he, Samuel, would pay off the fi. fas. against Burns, being about $150.00.

George K. Smith, testified: That he had several conversations with Samuel McKinney about the land in controversy; that a short time before his death, Samuel McKinney called at his office, at Stone Mountain, to have a deed written, so as to secure the land to the wife and children of Burns, so that it could not be taken for Burns' debts, and so that Mrs. Burns and her children would have a home safe; that witness was to write the deed that day, and would have done so, but that Samuel McKinney went out, and when he returned was intoxicated.

William Garrett, testified: That he was present, in January, 1844, when Burns called on Samuel McKinney for some money that Burns had ' left with McKinney to aid in buying a negro girl; that McKinney told Burns he had better not take the money then, for fear of a fi. fa. which might interfere in some way; that Burns told him the fi. fa. was settled; McKinney then said there was no chance to get the money then, as he had loaned it out; that, at another time,

agreement has been fully carried out by all the parties concerned, and the estate has become ready for distribution among the children, under the terms of the agreement: Held, the law will imply a trust in the two sons in favor of the beneficiaries provided for in the parol agreement." Holmes v. Holmes, 106 Ga. 858, 863.

witness was at Samuel McKinney's house, and Burns, being there also, said that he was not going away without his money, and that Burns and Charles McKinney were on their horses, and said they were going to try to get Burns' money.

The testimony being closed, the Court charged the jury:

"That, if they believed, from the testimony in this case, that Samuel McKinney used Burns' money in the purchase of the land, notwithstanding there was no evidence of the trust in writing, still a trust resulted, and the complainants were entitled to recover."

Counsel for the defendant then requested the Court to charge the jury:

"That, if they believed, from the facts in this case, that Burns did let Samuel McKinney have this money in 1836, the claim was barred after four years, and if more than that time had elapsed, and McKinney refused to pay the same, unless Burns would make the deed, and McKinney did pay it upon the receiving the title, then it was McKinney's own money and a trust could not result." The Court charged such to be the law, but added: "But, if McKinney did not see proper to take advantage of the statute, but recognized the debt, then the lapse of time would not operate to bar the claim, and complainants would still have a right to recover."

The jury returned a verdict for the complainants, that a resulting trust be declared and set up in Henry Burns, to the premises mentioned in the bill, and that the administrators of Samuel McKinney be enjoined from further efforts to sell said land, and that the defendants pay the costs of suit.

Counsel for defendants then made a motion for a new trial of said case, on the following grounds:

1. Because the Court erred in holding that, under the parol testimony in this case, a trust could be set up at all.

2. Because the Court erred in holding that parol testimony was competent in this case to establish a trust, when the deed from Burns to McKinney contained no such terms, or conditions, as are alleged to have been agreed on by the parties.

3. Because the Court erred in charging as he did, and in adding, to the request of defendant's counsel, as before stated.

4. Because the verdict is against law and evidence, and the weight of evidence.

The Court refused the new trial, which is the error assigned.

T. W. ALEXANDER, for the plaintiffs in error.

J. W. H. UNDERWOOD, for the defendants in error.

*By the Court.*—LUMPKIN, J., delivering the opinion.

Burns, in 1836, placed in the hands of McKinney, his father-in-law, $150.00, to purchase a negro to be settled upon Burns' wife and children—the daughter and grandchildren of McKinney.

In 1849, Burns bought the one-half of a lot of land, and needing money, he called upon McKinney for the $150.00 which he had never invested in a negro, as he promised to do. McKinney made some effort to raise the $150.00. He proposed to Burns that if he would make him a deed to the land which he, Burns, and his family, were living on, he could convey the same in trust to and for the separate use of Burns' wife and children. And the deed to McKinney was executed, no money being paid by McKinney, or note given, or the payment of the purchase money secured in any other way. McKinney acknowledged this agreement to the day of his death, which occurred in 1855; and, having made several unsuccessful attempts to have a deed drawn in pursuance of his agreement—which he never denied or repudiated—died, leaving the title in this condition, and Burns and his family in possession of the lot of land, which they have occupied ever since 1849, when it was bought and paid for by Burns.

The administrators of McKinney have advertised the land for sale, and the bill in this case is filed to stop the sale and to have a conveyance executed, according to the agreement between McKinney and Burns, or a resulting trust declared in favor of Burns, and this the Jury have decreed shall be done.

It is contended that a parol trust to the land can not be engrafted on the absolute deed from Burns to McKinney. There is no attempt to do this. The legal title was conveyed to McKinney merely to enable him to pass it over to Mrs. Burns and her children. The deed is founded upon no con-

sideration good or valuable. The title was conveyed to him for a particular purpose. It operates as a power merely. Powers of attorney are frequently executed in this way, and any attempt to hold or appropriate the land under such a power would constitute a . fraud, against which equity would grant relief.

And then, in the other aspect of the case, McKinney paid nothing for the land—Burns paid $150.00 for it—does not this constitute a resulting trust in favor of Burns? It is said, this doctrine don't apply where the grantor and he who pays the money are one and the same person. This may be so. None of the authorities cited sustain this distinction.

The justice of this case is with the finding of the jury, and we agree that it ought to stand.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be affirmed.