AULTMAN & COMPANY *v.* MASON.

1. This court cannot say that the trial judge abused his discretion in refusing to grant a new trial on the ground that the verdict was contrary to the evidence (although it would not have found as the jury did, taking the whole of the testimony into consideration), there being sufficient evidence to authorize the finding if the jury believed the defendant's witnesses, as they had a right to do.
2. A plea of breach of warranty and of failure of consideration does not add to or vary the contract between the parties, nor is it necessary to allege therein fraud, accident or mistake.
3. The purchase of the engine and saw-mill being one contract, and not two distinct ones (although notes were given separately for the engine and mill), if there was an express warranty made by the vendor and that warranty failed, the defendant had a right to have his damages, and the necessary expenses sustained by him by reason of the breach of warranty, deducted from the notes.

April 22, 1889.

Verdict. New trial. Evidence. Pleadings. Warranty. Consideration. Contracts. Damages. Before EDWARD HUNTER, Esq., judge *pro hac vice.* Johnson superior court. September term, 1888.

The following statement is supplemental to the report contained in the decision:

The special plea of defendant was, in brief, this: The engine and boiler, for which the notes were given, were not what they were represented by plaintiffs to be. The flues of the boiler were loose; the steam would escape so that it could not be kept up suf-

ficiently to keep the engine running.  It was repre-
sented to be a first class engine in every particular ; it
proved to be of little account.   The flues wore out
within six months, without fault of the defendant, and
a new one had to be supplied, which was done by plain-
tiffs, but at the cost of two months' waiting for the new
engine and the keeping up of the hands and stock nec-
essary to run the machinery, and the freight and haul-
ing thereof, amounting to a sum stated.   The engine
purchased to replace the first one was not of the same
size as the first, and therefore did not match the boiler,
necessitating a large amount of extra work and expense
on the machinery ; and in consequence thereof, the ma-
chinery did not do the work as it was guaranteed to do
by the plaintiffs.   It was represented by plaintiffs to
have the capacity of cutting ten thousand feet of lum-
ber per day ; in fact it would not cut more than half
that amount.   The purchase price of the machinery
was originally $1,700, but for the reasons above given,
it was worth $800.   $1,000 has been paid and credited
on the notes.   The plaintiffs agreed to repair the en-
gine and machinery for two years ; they failed to keep
said agreement, thereby causing defendants to expend
$500 or other large sums.

On the trial, the plaintiffs introduced the notes sued
on.   Two of them are given " for value received in one
Monitor traction engine, number 12," and the other
two " for value received in one plantation saw-mill,
number three."   They all recite that they are secured
by chattel mortgage of even date.   They make no state-
ment as to capacity or quality of the machinery.

Evidence for the defendant to the following effect,
was introduced :   The engine and mill were bought
from the agent of the plaintiffs, who said the machin-
ery would saw 10,000 feet of building lumber per day.
The engine was worthless, but the mill was good.

When they arrived, a man was sent by plaintiffs to put them up and start them to work, which he did, remaining several days; all worked tolerably well while he remained. The notes sued on and the mortgage for the purchase money were signed after the machinery had been received and had been operated several days. Defendant's engineer and sawyer could not keep the engine in running order; valves and flues were constantly out of repair, and much time and money were spent in having work done on the engine. At last, defendant ordered a new one from plaintiffs, and they sent it; it did not fit, and a man was hired to fit it on. For his services and other expenses certain amounts were paid by defendants. Defendant's engineer who first operated the machinery was no practical engineer, and had no experience in the saw-mill business or in operating such engines as this. They could not saw four or five thousand feet of building lumber per day; the fault was with the engine, which did not have the capacity to saw that much, besides being constantly out of order. Plaintiffs' agent promised to give a written warrant that it would saw 10,000 feet per day, but he never did so. Plaintiffs agreed to keep the engine in repair for two years. One of defendant's witnesses rented the engine once and used it to run a shingle machine; when he got it, it was in bad condition and was constantly out of order. He did not know what kind of treatment it formerly received. He had had some experience in operating engines, but was not an expert in machinery. The engine did not appear to be a good one. It was not worth more than the amount already paid on the notes; it could not be kept in repair. Another witness for the defendant used the engine several days to run a planing-mill; could not do full work on account of the bad order of the engine; did not know the cause; never had much to do with an engine.

In rebuttal, the plaintiffs showed as follows: A written order for the engine and mill were taken by plaintiffs' agent, defendant directing him to order the machinery, "with all necessary attachments ready for putting down to work"; and he agreed to give the notes in question and a mortgage on the machinery to secure them. Two months later the defendant gave the notes and mortgage to plaintiffs on the property, it then being in his possession. The mortgage represents to them that the mortgagor is the actual owner of the property, and that it is free from incumbrance, and warrants the title thereto. It contains the further stipulations that the property shall remain in possession of the mortgagor, and that the mortgagee shall have the right to have the property sold in case of default in payment of any of the notes. In neither the order nor the notes nor the mortgage is there any mention of the capacity or quality of the machinery. A witness for the plaintiffs was an expert machinist, and had followed the business for eighteen or twenty years. He had heard the testimony of defendant's witnesses, and from the defects they describe in the engine, and from the manner in which they say it was handled, he was of the opinion that such defects were the effects of bad and inexperienced management. He was acquainted with the make of the engine in question; it was a good one. In nine cases out of ten, such machinery will be ruined if put in the hands of inexperienced men. The man who first ran the engine for defendant left about six months after it was first commenced to be run, and then another man ran it. The latter testified, for the plaintiffs, that no defect developed with the machinery while he was running it; that it did good work, and would cut out five to six thousand feet per day; that when he took charge, he found the saw in bad shape, and certain valves worn out; that he considered the mill outfit first class, and thought

all necessity for repairs was from bad management; and that the mill was very good after he put it in operation. Another testified that he was employed by plaintiffs to put up the mill and put it in operation for defendant, and did so; that he worked about ten days putting it up, and then operated it two days, and was satisfied, as also was defendant; that it was his business to test the machinery; that defendant was present and well satisfied with it, and it was in first class working order when witness left; that its capacity varied according to the kind of lumber cut; in shipping lumber it would cut 10,000 or more feet, in building lumber not so much; that about this time, there was a conversation between defendant, plaintiffs' agent and witness, in which defendant said he doubted that the machinery would saw ten thousand feet, and witness said it would not saw that much in building lumber, whereupon plaintiffs' agent said it was not guaranteed in building lumber but in "shipping" or "ranging" lumber, and plaintiff acquiesced in this statement and said he believed it would cut that much of that kind of lumber; that witness offered to stay "and cut the guarantee," but defendant did not require it, but expressed himself as well satisfied with the work and the machinery. The engine and mill were new and first class. On the morning witness left, defendant said he thought it was the best steamer he ever saw. There was nothing said in this witness's presence about the company's giving a written guarantee, or about defendant's not being satisfied, or that he had been misled by plaintiffs' agent. The plaintiffs also introduced four letters, written by the defendant to their agent about ten or twelve months after receiving the machinery. The main object of these appears to have been to secure the release of one who had signed the notes with the defendant, and who was interested with him in the business, but from whom defendant desired

to separate.    This man was one who first ran the engine after it was put up and plaintiffs' man had left.    In one of the letters, the defendant states that he himself had run the mill much better than his associate, and that it was in better condition than while under his control; another contains a statement, apparently referring to the debt in question, to the effect that defendant had paid all the old debts that his former associate had made, that he would pay the debt referred to if given a chance, and asking the agent to sell the mill if he could do so, " as it is going to take me some time to pay it, but if you cannot sell it, I will pay for it some time." In none of these letters appears any complaint as to the working of the machinery.

A. F. DALEY, for plaintiffs.

No appearance for defendant.

SIMMONS, Justice.

This was an action to recover a balance due on certain promissory notes given for the purchase price of an engine and saw-mill.    The defendant filed two pleas to the action:    (1) the plea of the general issue ; and (2) the plea of breach of warranty and failure of consideration.    On the trial of the case, the jury returned a verdict for the defendant.    The plaintiffs moved for a new trial, which motion was overruled by the court, and they excepted.

The grounds of the motion for a new trial are as follows :    (1-2) that the verdict is contrary to law and the evidence ; (3) that the court refused to strike the defendant's plea of breach of warranty and failure of consideration, on the ground that such plea contradicted and added to the contract between the parties without any allegation of fraud, accident or mistake ; (4) that the court erred in charging the jury that they should allow, by way of recoupment against the notes

sued on, the damage or expense incurred by defendant by reason of any breach of warranty on the engine, although separate notes were given for the saw-mill, and no breach of warranty or failure of consideration was alleged or proved as to the saw-mill.

1. We have read the testimony in this case as sent up in the record, and while we would not have found as the jury did, taking the whole of the testimony into consideration, yet if the jury believed the defendant's witnesses, as under our law they had a right to do, there was sufficient evidence to authorize their finding; the trial judge was satisfied therewith, and we cannot say that he abused his discretion in refusing to grant a new trial on the ground that the verdict was contrary to the evidence.

2. While we do not decide that the special plea filed in this case was a plea of breach of warranty, yet as it was so recognized by the court below and by the counsel for the plaintiffs, and as he alleges in his motion for a new trial that it was a plea of breach of warranty, we will so treat it for the purpose of this case. Treating it thus, we hold that the court did not err in refusing to strike said plea upon the ground complained of in this part of the motion for a new trial. A plea of breach of warranty and of failure of consideration does not add to or vary the contract between the parties ; nor is it necessary to allege therein fraud, accident or mistake. While "it is an undoubted rule of the common law that parol contemporaneous evidence shall not be received to vary or contradict a written contract, this rule does not preclude proof between proper parties, to negative the presumption which the law raises, that a note or bill is founded on a valuable consideration. Nor does it stand in the way of parol evidence to contradict an express and even specific admission in the paper of a consideration. It may be shown that there was no con-

sideration, or a different one." 2 Suth. Damages, 134. "The consideration being open to inquiry, so far as the promise to pay depends upon its existence, continuance or amount, such promise may be indirectly varied and controlled by parol evidence; not by showing that a different promise from the written one was made, but that it is different in legal effect, as a consequence of a want, cessation or shrinkage of the consideration by evidence that the consideration implied had no existence; that it did not continue, or was, or has become, deficient in amount. The promise may be thus altogether undermined, postponed or reduced. A different agreement cannot be shown from that expressed in the note." *Ibid.* 136. See Code, §3471, 2748, 2857; *Knight* v. *Knight*, 28 *Ga.* 165; *Butts* v. *Cuthbertson et al.*, 6 *Ga.* 166; *Finney* v. *Cadwallader*, 55 *Ga.* 75.

3. Nor was there any error in the charge complained of in the fourth ground of the motion. The purchase of the engine and saw-mill was one contract, and not two separate and distinct contracts, as claimed by the plaintiffs in error, although the notes were given separately for the engine and for the saw-mill. Being one contract, if there was an express warranty made by the vendor and that warranty had failed, the defendant had a right to have his damages, and the necessary expenses sustained by him by reason of the breach of warranty, deducted from the notes. 55 *Ga.* 75, *supra.*

*Judgment affirmed.*