### BAGWELL v. MORTON.

1. It being a question vital to the defense of the action brought in the present case, whether or not a partnership had existed between the plaintiff and defendant, and there being in one of the defendant's pleas certain allegations upon which he relied as alleging, in substance, the existence of such partnership, while it is not now decided that these allegations can be properly construed as so doing, yet as they seem to have been treated in the trial court as sufficient for the purpose indicated, this court will deal with them accordingly.

2. Thus regarding the allegations mentioned, it was error to strike other portions of the plea, in which the defendant set out certain payments he had made in behalf of the alleged partnership, and other facts entitling him to relief against the plaintiff as a former partner. If the partnership in fact existed, the defendant was entitled to plead and prove any and all facts showing liability to him on the part of the plaintiff growing out of that relationship. If there was no partnership, the contrary would be true.

April 1, 1895. By two Justices. Brought forward from the last term.

Equitable petition. Before Judge HENRY. Walker superior court. February term, 1894.

R. M. W. GLENN and PAYNE & WALKER, for plaintiff in error. COPELAND & JACKSON, *contra.*

Simmons, Chief Justice.

Morton filed his petition against Bagwell, alleging that while he (plaintiff) was absent from the State, the defendant fraudulently and without notice to him obtained an attachment against him and had the same levied upon his property, and that the property was sold to innocent purchasers. He prayed that the judgment be set aside, that Bagwell be enjoined from collecting it, and that he recover from Bagwell damages as set out, etc. The defendant pleaded the general issue; also: In March, 1887, he and Morton entered into a verbal contract, by the terms of which he was to furnish Morton with a stock of goods of $753.88 and a sufficient additional sum to make $1,000, for the purpose of running a mercantile business at Crawfish Springs, Ga. Morton was to take charge of the business, attend to it, retain for his services one half of the net profits; the remaining half was to be paid to defendant; and when Morton ceased to do the business, defendant was to be repaid his $1,000 and one half of said profits. It was expressly agreed between them that no debts were to be created in market for goods, but all goods should be paid for as bought. Defendant fully complied with his part of the contract, by turning over to Morton said stock of goods and making cash payments to make the sum of $1,000; and plaintiff went into possession of the same under this contract in March, 1887, and continued to run the business until March 15, 1888, when he left the country, leaving a small stock and the land sold under the attachment levy, without settling with defendant as he had agreed to do. Defendant invoiced the stock and found it to invoice, including all character of goods, $947 [and the following amount due in market and demanded to be settled, viz. (Here follows a list of creditors, and the amount due each, the total amounting to $463.21.) Defendant shows that said parties holding said demands threatened

to close the business run by said plaintiff as aforesaid, unless these amounts were settled. Defendant shows that said plaintiff owned no property at the time except property sold and about $25.00 of other property and $947.00 stock of goods. Plaintiff was indebted as aforesaid, and plaintiff being wholly insolvent in fact and in law, and from said stock of goods and said tract of land sold at that date worth about $100, he would have to secure himself therefrom for the $1,000 advanced and one half of net profits, and the further sum of $125 which plaintiff owed to defendant. Defendant shows, said property being inadequate and said plaintiff insolvent and having left the State, he, by threats of closing the business out by said creditors of said Morton to cause litigation and probable loss to defendant, did pay to the aforesaid creditors the sum of $463.21. Defendant shows that after the payment of said indebtedness aforesaid, it reduced the amount of the net stock down to $484.00, leaving plaintiff owing to defendant the sum of $740.00, and after deducting the sum of $153.00 received on account due, leaves a balance of $587.00, besides the half-interest in the profits of business. Defendant shows that said Morton received from said business the following sums: (setting out different items aggregating $503.98), which plaintiff never accounted for.] Plaintiff was indebted to defendant as alleged in defendant's original petition, and the same has never been paid.

That part of the plea which is enclosed in brackets was disallowed by the court. The defendant further pleaded: He paid for plaintiff $462.21 of debts due by plaintiff to the parties named above, and pleads a set-off of any amount plaintiff might be allowed. This also was disallowed by the court.

The ground upon which Bagwell sought to hold Morton liable for the payments claimed to have been made by him

(Bagwell) to third persons, was, that as to the persons to whom the payments were made they were both liable as partners; and having discharged the liability to these persons himself, he was entitled to have recourse against Morton. The allegations relied upon to show the existence of the partnership were contained in that part of the plea which was not stricken. Under these allegations it is uncertain whether the contract between Bagwell and Morton was one of partnership or merely one of hiring. One part of the plea indicates that the contract was one of hiring, for it says that Morton was to receive half of the profits "for his service"; other features of the contract would seem to indicate that it was one of partnership, it being agreed that no debts were to be created for goods, but all goods should be paid for as bought, and that Morton was to run the business and have charge of it. (See *Perry* v. *Butt & Banks*, 14 *Ga.* 699; *Powell* v. *Moore, Marsh & Co.*, 79 *Ga.* 525, and cases cited; *Fougner v.* First Nat. Bank of Chicago, 141 Ill. 124, 30 N. E. Rep. 442; Parsons on Partnership, 4th ed., §§69, 70, and cases cited; 17 Am. & Eng. Enc. of Law, Partnership, pp. 831 *et seq.*, 841, 845.) It is not now necessary, however, to decide whether these allegations can be properly construed as alleging the existence of a partnership or not. Inasmuch as they appear to have been treated in the trial court as sufficient for that purpose, we deal with them accordingly. (See *Aultman* v. *Mason*, 83 *Ga.* 218.)

Thus regarding the allegations referred to, we think it was error to strike other portions of the plea, in which the defendant set out the payments claimed to have been made by him in behalf of the alleged partnership, and other facts entitling him to relief against the plaintiff as a former partner. If there was a partnership, he was entitled to plead and prove any and all facts showing liability to him on the part of the plaintiff, growing

out of that relationship. Of course, if there was no partnership, and Bagwell voluntarily paid Morton's debts when he (Bagwell) was not responsible for them and had made no contract with Morton to do so, he cannot set them up against Morton in this action.

*Judgment reversed.*