DURRETT *et al. v.* McWHORTER *et al.*

There was no error requiring the grant of a new trial, in the various rulings and instructions excepted to (and stated at length in the opinion of the court, infra); and the evidence authorized the verdict.

No. 4574.    SEPTEMBER 29, 1925.

Equitable petition. Before Judge Roop. Carroll superior court. September 6, 1924.

*Willis Smith* and *Sidney Holderness,* for plaintiffs.

*Smith & Millican* and *Boykin & Boykin,* for defendants.

ATKINSON, J. Certain heirs at law brought suit against two of their coheirs. The petition as amended alleged that the ancestor

executed separate deeds purporting to convey described realty to each of the defendants, and one deed purporting to convey other described realty to them jointly, subject to an outstanding loan deed, and that on the same day the ancestor executed a will omitting all reference to the lands referred to in the deed, but purporting to bequeath described personalty to the defendants and to direct payment of specified sums of money to the other heirs individually; that, on the pretext of a formal defect in the will, a second will was executed thirteen days later, substantially as the first; that the deeds and will were void, (a) because of mental incapacity of the ancestor to make a contract or will; (b) because of undue influence amounting to fraud exercised by the defendants over the ancestor, thereby causing him to execute the deeds and will. It was also alleged that at the time the deeds were executed the ancestor intended, and it was agreed between the ancestor and the defendants, that the lands should be held in trust, to be distributed equally between all the heirs; that after the ancestor's death the defendants agreed with the other heirs to carry out the said agreement with the ancestor, and on the strength of such agreement the other heirs did not protest the probate of the will; that the will was admitted to record, and the defendants qualified as the executors; that the defendants took possession of personalty left by the ancestor other than that specifically devised in the will, and they in recognition of their agreement to distribute the land equally among all the heirs paid to the heirs stated sums, the amounts paid to some of them exceeding the amounts that they were given under the will; that, the deeds being void, the real estate described in them was property of the ancestor at the time of his death; and that there was an intestacy as to all the realty and personalty other than that specifically mentioned in the will. The prayers were, to set aside the deeds and the will and the judgment probating the will, for recovery of distributive shares in the realty and personalty, for an accounting, and for the appointment of a receiver. The defendants' answer admitted that the deeds were executed and that the second will was executed and probated, but denied all allegations as to mental incapacity of the ancestor, and all allegations as to fraud or the exercise of undue influence over the ancestor. It denied all allegations as to the intention of the testator to have the land distributed among all his heirs; all allega-

tions as to any agreement by them with the ancestor, or with the heirs after the death of the ancestor, that the lands should be divided among all the heirs; and all allegations as to the defendants' taking possession of any personalty of which the ancestor died seized and possessed other than that described in the will. At the trial the jury returned a special verdict favorable to the defendants, by answering certain questions submitted to them by the court. The plaintiffs' motion for a new trial was overruled, and they excepted.

1. A witness for the plaintiffs testified: "They [defendants] said they was going to divide it [the land] up equally amongst his [the ancestor's] children." This evidence was ruled out, the court stating that it did not "illustrate anything." The ruling was assigned as error, because "it was the scheme of the" ancestor, "suggested to him by" the defendants, "to convey the property to" them, "and that they would sell the same and divide it equally among the heirs at law; that he, relying on their promise to do this, conveyed the property to them, believing at the time he executed the same that it was a trust deed and that his purpose would be carried out. And in this connection it was shown that while he made a will and gave this witness . . $25.00, that the executors [defendants] paid her $500.00, the same that was paid the other heirs, showing that they intended to carry out the old man's scheme. . . It proved that the deed was really a trust deed, or that it was secured by fraud, and showed that they really accepted the deeds as trustees, and . . that said testimony . . was material in view of the pleadings in said case." Error was also assigned on the statement that "it would not illustrate anything," on the ground that the statement was the expression of an opinion prejudicial to the plaintiffs. Upon these exceptions it is held: (a) A parol trust can not be engrafted on an absolute deed. (b) There was no evidence that the defendants suggested to the ancestor a scheme that he should convey the land to them and that they would sell it and divide it equally among the heirs at law. (c) The rejection of the evidence was not erroneous for any of the reasons assigned. (d) The statement by the court was not harmful to the plaintiffs.

2. A witness for plaintiffs on direct examination was asked: "What occurred between him [the ancestor] and Frank [one of the defendants], and what did Frank agree to do?" The witness

answered: "He said he was going to leave it with Frank, and if he didn't fool him . . ." Whereupon the court remarked: "You have repeated that; you need not tell that any more." Error was assigned upon this interruption of the witness, because it indicated that the court "leaned toward" the defendants' side of the case, and was calculated to prejudice the minds of the jury against the plaintiffs. There is no merit in the exception.

3. A ground of the motion for new trial alleged that a witness for plaintiffs was asked, "After he said that the 150-acre place was worth $100.00 per acre, 'selling it for $3,000.00,' would you say that was a fair intelligent trade?" and that the witness answered, "I do not think so," and that the court ruled out the answer, on objection. The question was for the jury, and not a proper subject for opinion evidence. There was no error in excluding the evidence.

4. A ground of the motion for new trial alleged that the question was asked: " 'Did the old man believe that?' (meaning did the old man believe what Frank told him, i. e. that the papers were fixed in the way that Holderness had advised that they be fixed). Whereupon counsel for defendants objected on the ground that it would be [a] conclusion on the part of the witness. Whereupon counsel for movants stated: 'I asked him if the old man believed the statement of Frank.' The court then remarked: 'How does he know? I sustain the objection.' " This ruling was not error, as contended, because: (a) the court expressed an opinion prejudicial to the plaintiffs; (b) "it is probable that the witness did know whether or not E. McWhorter believed what Frank told him, and he knew or could have known whether E. McWhorter relied on the statement of Frank as to whether or not the papers had been prepared by the attorney chosen to prepare them."

5. The court did not err in admitting testimony for the purpose of showing mental capacity of the ancestor, as follows: "Question: 'He told you, just prior to the time this will was made, that he was going to pay his children according to the way they paid him?' Fleming answered: 'That was when he come and got the will. That was when he went off for an operation. Soon after he come back he came by there and got the will. That is when he told me about what his attorney said. He did not mention any of his children.' "

6. The seventeenth ground of the motion for a new trial is as

follows: "Because during the examination of Frank McWhorter, a witness being examined adversely by plaintiffs, this question was asked: 'How many horses run on the place?' and he answered: 'I believe, something like four or five' (referring to the 450-acre farm). Whereupon the court remarked: 'You undertaking to recover the personal property?' And counsel for plaintiffs answered: 'Recover it for the reason that the administrator of the estate failed to administer it and would be bound to administer it.' The court then observed: 'You are not suing the administrator?' And counsel for plaintiffs observed: 'Yes sir, we say the estate consisted of this property, rents, issues, and profits thereon, and personal property; they have failed to administer it and they are bound under the law to administer it.' Whereupon the court observed: 'I understood from your pleadings you are undertaking to recover for the real estate.' Counsel for plaintiffs then remarked: 'Yes, sir, and alleged he had $7,000.00 in money and rents that went into their hands.' The court then asked, 'Money and rents in their hands?' Counsel for plaintiffs replied: 'Yes, sir, that is what we alleged.' The court then remarked: 'You can not go into an accounting for all the time; if you do, I will stop this case right here.' Counsel for plaintiffs observed: 'The old man had an account with each tenant.' By the court: 'How many tenants did he have?' The witness then answered: 'There were six tenants as well as I remember, and I planted a little corn patch over on the creek; my boy did. After he made these deeds he turned it over to me and says: "That bottom down the branch, I will let your boy tend it," and my boy tended it.' Counsel for plaintiffs then remarked: 'I do not know that an accounting is necessary, so far as I have examined into that branch of the case. I am merely showing the assets in his hands.' The court then observed: 'I will let you do that, but why show whether there was one mule or ten mules?' Plaintiffs' counsel then stated: 'Show the value of it.' By the court: 'Suppose it did not all go into his hands?' Counsel for plaintiffs then said: 'He says it did. He says his father gave it to him.' Whereupon the court said: 'Go ahead.' Notwithstanding the above colloquy and statement, the court in his charge to the jury propounded the following question (being question No. 4 above referred to): 'What is the total rental value of the land described in the joint deed to de-

fendants?' and continued his charge to the jury by saying: 'Now, gentlemen, to determine that, you will look to the evidence.' Whereupon Mr. Holderness, counsel for plaintiffs, remarked: 'I just stated in the trial of the case, in open court, we only raised the question of rent for the first year. The other would be a matter of settlement.' Whereupon the court continued: 'Gentlemen, in passing on that question you will look to the evidence and see what was the rental value of the respective tracts of land. I will write in my question No. 4: What is the total rental value of the land described in joint deeds to defendants? You remember one deed was made to both. Likewise in deed to Frank McWhorter insert your answer. Likewise in deed to Tink McWhorter. Answer so many dollars as to the total.' And the court continued: 'Now, you look to the evidence and see if the evidence shows the annual rental value of these respective parcels of land described in these several deeds, and determine what the rental value of these parcels of land was for the years 1918 up to 1923, inclusive. Whatever the evidence shows the total rental value to be for these three years, you write that amount in answer to these questions, these several questions. Put in the proper amount opposite the questions, the total amount.' It will be seen that it was agreed in open court, before the above questions were propounded, that the plaintiffs were only undertaking to show the assets in the hands of defendants at the time of the death of E. McWhorter, including the rent for the year 1918.' The court stating that if counsel went into an accounting for the other years, that he would stop the case right there. Counsel for plaintiff made the statement above quoted, i. e. that he was only undertaking to show the assets in the hands of defendants, and the case proceeded to trial along these lines. When the court charged the jury as above quoted, objections were made, as above stated; yet the court ignored the same and put the questions which movants insist were prejudicial to the case of plaintiffs, and caused the jury to believe that the court leaned toward the contentions of plaintiff [defendants?], and was calculated to prejudice the rights of plaintiffs in the minds of the jury. Movants insisting that the proper rule in a case of this sort would be to determine what came into the hands of defendants at the time they took charge of the estate, and that it would have been proper for an accounting for future rents to have been had, provided plaintiffs recovered. That

when this colloquy took place in the presence of defendants and defendants' counsel, that it was a tacit agreement, which the court approved, that only the rents for one year should be brought into question; and the fact that the court, after objection, charged the jury as he did was prejudicial to the rights of plaintiffs. The charge was such as to cause the jury to conclude, under the circumstances, that counsel for plaintiffs was undertaking to misrepresent the facts and mislead the court, and this was calculated to make them have but little respect for plaintiffs' counsel and to prejudice them against the rights of plaintiffs' case. Wherefore, for said reason, a new trial should be granted. Movants insist further that the statement of the court that he would stop the case then and there if an accounting was had for the rents for the several years from the date of the deeds to the date of the trial, and then on the statement of counsel for plaintiffs that they were undertaking to recover only the property taken charge of at the time of the death of E. McWhorter, was tantamount to an agreement that only such issues should be entered into. And then, for the court to charge the jury as he did, over the objection of counsel for plaintiffs, was error, because as aforesaid it was prejudicial to the rights of plaintiffs." We hold that the charge was not erroneous for any reason assigned.

7. A witness for the defendant was asked, on cross-examination, the question: "Did he see you with it?" (referring to the will). A ground of the motion for new trial excepts, for several reasons, to the refusal of the court to allow the question to be answered. There is no merit in this ground.

8. A witness for the defendant testified that he had a conversation with the ancestor "some time before he died, not so powerful long after he married the last time. . . He told me he expected not to give his girls anything, because they had not treated him right. He was talking about his family." It was shown, on cross-examination, that the conversation took place in the ancestor's front yard while he lived in Alabama, and by other evidence that he married the second time and left Alabama in 1899 many years before his death. There was also evidence tending to show that the girls did not receive the second marriage cordially, and that their attentions to their father thereafter were never such as to show complete reconciliation. The judge did not err in admitting

the above-quoted evidence over the objection that the time to which it referred was too remote.

9. The judge did not err in charging the jury as follows: "Now the petitioners in this case insist, first: that the deeds should be set aside by this jury, because the grantee [grantor], E. McWhorter, did not have sufficient mental capacity to make the deeds at the time of their execution. Well, gentlemen, the law on this question does not require a high degree of mental power to make a · binding contract. One who has enough of mind and reason to a clear and full understanding of the nature of the consequences of his act in making a deed is to be considered sane. One who lacks this capacity is to be considered insane. The law says one who has not the strength of mind and reason equal to a clear and full understanding of his act in making a contract is one who is afflicted with an entire loss of understanding." *DeNieff* v. *Howell,* 138 *Ga.* 248 (5) (75 S. E. 202); *Dunn* v. *Evans,* 139 *Ga.* 741 (78 S. E. 122); *Barlow* v. *Strange,* 120 *Ga.* 1015 (48 S. E. 344); *Frizzell* v. *Reed,* 77 *Ga.* 724 (2); *Nance* v. *Stockburger,* 111 *Ga.* 821 (36 S. E. 100); *Whitehead* v. *Malcom,* ante, 55 (129 S. E. 769). The request to review and overrule the decision in *DeNieff* v. *Howell, Barlow* v. *Strange,* supra, and other cases adhering to the doctrine of those decisions, is refused.

10. The third and seventh grounds of the amended motion for a new trial allege that the judge stated certain principles of law as applicable to the case, and then submitted certain questions to be answered by the verdict of the jury; and that the charge as given, taken in connection with the questions propounded, took from the jury the right to properly apply the principles of law given in charge; and further that the judge should have submitted to the jury a question under which they would have had the right to apply stated principles of law; and that the charge as given was erroneous for each of the reasons assigned. The order of the judge approving the grounds of the amendment to the motion for a new trial stated: "The recitals of fact in the foregoing amendment approved as correct, except grounds III and XII, which should be numbered XIII. These are approved as shown in explanatory note hereto attached as exhibit 'A,' ordered filed as a part of the record." The explanatory note was in part: "The 2nd and last question set out in ground III of the amended motion, purporting to be an

excerpt from the charge, is not a correct quotation from the charge of the court, and the questions therein set out are not the questions submitted by the court to the jury, as will appear by reference to the approved charge and questions signed by the foreman, sent up as a part of the record. It is true that no question was submitted authorizing the jury to set aside the deeds on the sole grounds of inadequacy of consideration, joined with great disparity of mind, independent of mental capacity, fraud, or undue influence, which are the only grounds, as the court construed the petition, the plaintiffs alleged the deeds should be set aside for. Before submitting the case on questions, same were submitted to counsel on both sides; and this colloquy, taken from the stenographic report of the charge, occurred: 'You gentlemen' (addressed to counsel by the court) 'agree to submit the case on these questions?' Mr. Holderness (counsel for plffs.): 'Yes.' This explanatory note as to the questions submitted applies also to grounds IV, VII, IX, X, and XII." It must be held that it does not appear that there was an approval of the third ground of the amendment to the motion for a new trial, and the assignment of error based thereon does not present any question for decision.

11. In the fourth, ninth, tenth, and twelfth grounds of the amendment to the motion for a new trial, complaint is made of the failure to submit certain questions to the jury. In the light of the statement in the notes by the presiding judge quoted in the foregoing division, as to the agreement of the attorneys "to submit the case on these questions," there was no merit in these grounds.

12. The judge charged: "Gentlemen, the law is this (I will call your attention to undue influence). A person standing in confidential relation to another is not prohibited from exercising any influence whatever to obtain a benefit to himself. The influence must be what the law regards as undue influence. Such influence as is obtained by flattery, importunity, superiority of will, mind, or character, which would give dominion over the will to such an extent as to destroy free agency, or constrain one to do against his will what he is unable to refuse. Such is the kind of influence which the law condemns as undue." Error was assigned on the portion of the charge contained in the first two sentences above quoted. When the portion of the charge excepted to is considered in connection with its context, there was no error in the charge. *DeNieff* v. *Howell,* supra.

13.  The sixth ground of the motion for new trial alleges that the charge as a whole was erroneous.  This is not a proper ground of exception.

14.  The eleventh ground was merely elaborative of the general grounds.

15.  The evidence authorized the verdict, and there was no error in refusing the motion for new trial.

*Judgment affirmed.  All the Justices concur.*