PITTMAN *v.* PITTMAN *et al.*

398

No. 14564.   JULY 8, 1943.

402

*Eugene A. Epting,* for plaintiff.   *Joseph E. Webb, Shackelford & Shackelford, John B. Gamble,* and *Erwin & Nix,* for defendants.

JENKINS, Justice. ■ The court properly overruled the demurrers to the answer and the intervention, on the ground that the intervenors had no interest in the subject-matter of the original litigation between the plaintiff and the defendant, for the reason that the plaintiff not only sought a decree of specific performance of an escrow agreement with the defendant vendee, and possession of the land in question under the defendant's quitclaim deed to her and agreement to surrender possession, but she also offered in her petition to surrender to the defendant, her vendee, his purchase-money notes; whereas, under the averments of the answer and of the intervention, it was shown that the plaintiff had knowledge of the fact that her husband, under whom she held by virtue of a voluntary deed, had agreed with the intervenors that their deed to him was merely in the nature of a power of attorney to sell their half interest in the property; and that a half interest in any purchase-money was to go to them. Accordingly, the intervenors had a direct interest in the subject-matter of the original litigation. If it were necessary that the alleged agreement between the plaintiff's grantor and his sisters, the intervenors, should have been in writing, even then, so far as the demurrers are concerned, there was nothing to indicate that such was not the case. *Eaton* v. *Barnes,* 121 *Ga.* 548 (3) (49 S. E. 593).

■ Although it does not appear from the pleadings, it does from the evidence, that the trust set up between the intervenors and their deceased brother was not evidenced in writing; and since an express trust is required to be in writing (Code, § 108-105), can the facts set up and proved by the intervenors be taken as sufficient to nullify the brother's title, so as to bind his wife, who was his voluntary grantee? The intervention pleaded that the deed executed by the intervenors to their brother in 1931, conveying their half interest in the property, although reciting a consideration of "one dollar and other valuable consideration," was made without any actual consideration, and with the understanding, and on his agreement, that he would find a purchaser, sell the property, and give the intervenors half of the purchase-money. By amendment it was stated that the deed from the intervenors to the brother was made for the purpose of authorizing him "to act for them and in their steads in making a sale of said property;" and that under his voluntary deed to the plaintiff "she became . . a substitute

trustee, and holds for their benefit." The intervenors pleaded that in 1934 the brother executed to his wife, the plaintiff, a deed of gift, and she received the deed with full knowledge that "the property was to be sold when agreed to by these intervenors, and that they were to receive one half of the purchase-money." The alleged understanding between the intervenors and the plaintiff's deceased husband, under whom she claimed by virtue of his voluntary deed, was shown, not only by the testimony of the attorney, Abit Nix, who represented all parties in preparing the deed from the intervenors to their brother, and whose evidence was admitted over objection, later dealt with herein, but by the undisputed testimony of the intervenors themselves, which latter evidence was admitted without objection. There was also testimony, admitted without objection, that after the plaintiff sold the property to the defendant, and upon her being approached by one of the intervenors, the plaintiff replied that when she collected the purchase-price "she was going to divide with" the intervenors. It thus appears that the intervention as amended was sustained by the evidence.

The Code, § 108-104, defines express and implied trusts as follows: "Express trusts are those created and manifested by agreement of the parties. Implied trusts are such as are inferred by law from the nature of the transaction or the conduct of the parties." Since the intervenors did not rely upon an express trust, pleaded as such, could the language of the amendment as sustained by proof be taken, under the pleaded and proved facts and circumstances, as setting up a constructive trust, although the words used with respect to the trust might perhaps suggest and import an express trust? In *Jenkins* v. *Lane,* 154 *Ga.* 454 (3, *a*; 4), 477 (115 S. E. 126), this court held that while fraudulent undertakings or promises, whatever their terms, "do not, unless reduced to writing, raise express trusts," yet "the law, acting upon them according to their nature, makes them a basis upon which to build up in favor of the defrauded party an implied or constructive trust. . . While an express trust can only be shown by a writing, an implied trust may rest upon an express parol agreement, fraudulently made, by which a person acquires title to property of another; and in such case the express promise may be proved by parol to raise, not an express, but an implied trust." Likewise, in *Guffin* v. *Kelly,* 191 *Ga.* 880, 886 (14 S. E. 2d, 50), the court said: "The fact that the

plaintiff alleged that a certain oral agreement was made between him and [the other parties] at the time of such conveyance to the latter, did not render the petition defective as seeking to enforce an express trust by parol. *If from all the facts and circumstances an implied trust is otherwise established,* it is not destroyed by the express verbal agreement which may have constituted part of the transaction. The express agreement may be shown, not as fixing the interest to be owned by the parties, but as rebutting the inference of a gift by the plaintiff." [Italics ours] To the same effect see *Hemphill* v. *Hemphill,* 176 *Ga.* 585, 590 (168 S. E. 878) ; *Hadaway* v. *Hadaway,* 192 *Ga.* 265 (14 S. E. 2d, 874) ; 3 Scott on Trusts, §§ 482, 485, 486, and cit. It matters not whether a fraudulent intention existed at the time the conveyance was made. "Constructive trusts are such as are raised by equity in respect of property which had been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it." *O'Neal* v. *O'Neal,* 176 *Ga.* 418 (2) (168 S. E. 262) ; 26 R. C. L. 1232, § 78; 3 Scott on Trusts, 2317, § 462.2.

In construing the codified rules quoted, defining express and implied trusts, it has been held in general terms that "a parol trust can not be engrafted on an absolute deed." *Durrett* v. *McWhorter,* 161 *Ga.* 179, 181 (129 S. E. 870). But a "deed" as referred to in such decisions must have reference to an instrument valid not only in form but in substance, and not to a deed wholly without consideration, good or valuable, and where the grantee fraudulently holds thereunder against the rights of the vendor. The general rule stated in the *Durrett* case is but the application of another rule that it is not permissible to vary or contradict by parol the terms of a written instrument. But our Code, § 29-101, declares that "a deed to lands must be . . made on a valuable or good consideration," and that "the consideration of a deed may always be inquired into when the principles of justice require it." If, however, the instrument states the consideration, not merely by way of recital, but in such a way as to constitute it a part of the terms and conditions of the agreement itself, then and in such event it is not permissible, even under the guise of inquiring into the consideration, to set up a *new and different* consideration, and in this way to incidentally modify the terms and conditions of the

written contract. But the rule just stated does not have application where a total lack or a total failure of consideration is shown. In that event the instrument can be attacked irrespectively of how or in what manner the consideration may be expressed. *Carter* v. *Walden,* 136 *Ga.* 700 (71 S. E. 1047); *Finch* v. *Woods,* 113 *Ga.* 996 (39 S. E. 418); *Aultman* v. *Mason,* 83 *Ga.* 212, 219 (9 S. E. 536); *Byrd* v. *Marietta Fertilizer Co.,* 127 *Ga.* 30, 34 (56 S. E. 86), and cit.; *Ramsey-Fender Motor Co.* v. *Chapman,* 46 *Ga. App.* 385, 390, 392 (168 S. E. 92), and cit.; Code, § 29-110.

In the instant case, although a "valuable consideration" is mentioned in the deed of the intervenors to their brother, what such "valuable consideration" was is not set forth. The evidence for the intervenors was undisputed that none existed, unless it be the assumption by the brother of his obligation to sell the land and pay the intervenors their half interest in the proceeds. In other words, if the brother did not take the title with this trust or condition, he did not take any title at all; and such being the case, it would be a fraud for him to hold it adversely or to give it to his wife. It follows that, since the deed was wholly without any good or valuable consideration, other than the trust assumed, and since the only title at all that the brother could have had was a title in trust, the claim of these intervenors is not an attempt to engraft on an otherwise good and valid absolute deed an extraneous parol trust, but is an effort either to void the deed, or else to sustain it in the only way that it might possibly be given effect, if allowed to have any effect at all.

This is not a new proposition before this court. Substantially and in legal effect the identical question here involved was decided by a unanimous bench in *McKinney* v. *Burns,* 31 *Ga.* 295, 299, where it was said: "It is contended that a parol trust to the land cannot be engrafted on the absolute deed from Burns to McKinney. There is no attempt to do this. The legal title was conveyed to McKinney merely to enable him to pass it over to Mrs. Burns and her children. The deed is founded upon no consideration good or valuable. The title was conveyed to him for a particular purpose. It operates as a power merely. Powers of attorney are frequently executed in this way, and any attempt to hold or appropriate the land under such a power would constitute a fraud, against which equity would grant relief." The rulings in this case and in the

*Jenkins* case, which we think fairly control the instant case, are in harmony with other sections of the Code, which provide that "Trusts are *implied* . . where, from any fraud, one person obtains the title to property which rightly belongs to another;" or "where from the nature of the transaction it is manifest that it was the intention of the parties that the person taking the legal title should have no beneficial interest." § 108-106 (2), and (3). The ruling also conforms to what was said in *Guffin* v. *Kelly, O'Neal* v. *O'Neal, Hemphill* v. *Hemphill,* and the text authority, above quoted or cited. See *Lawson* v. *Prosser,* 146 *Ga.* 421, 424 (91 S. E. 469) ; *Williams* v. *Smith,* 128 *Ga.* 306, 310 (57 S. E. 801) ; *Peppers* v. *Peppers,* 194 *Ga.* 10, 12 (20 S. E. 2d, 409) ; *Simpson Grocery Co.* v. *Knight,* 148 *Ga.* 410 (96 S. E. 872).

In cases relied upon in the strongly presented and well considered brief for the plaintiff in error, there was no showing that the conveyance lacked consideration or was fraudulent. Those decisions are thus distinguishable; or else they involved an attempt, not only to actually plead an express trust based on a parol agreement, but to rely on it as such, or involved an effort to invoke another and different principle, under which a trust results where one person takes the legal title and another claims the beneficial interest on account of payment of the purchase-money or by reason of a contemporaneous parol agreement. The following cases, cited for the plaintiff, are so distinguished, or else were based upon facts wholly different from those in the present case: *Wood* v. *Rice,* 143 *Ga.* 647, 650 (85 S. E. 838) ; *Drake* v. *Drake,* 161 *Ga.* 87 (131 S. E. 496) ; *Wilder* v. *Wilder,* 138 *Ga.* 573 (75 S. E. 654) ; *Evans* v. *Pennington,* 180 *Ga.* 488 (179 S. E. 123) ; *Brown* v. *Carmichael,* 152 *Ga.* 353 (5) (110 S. E. 3), 149 *Ga.* 548 (101 S. E. 124) ; *DeLoach* v. *Jefferson,* 142 *Ga.* 436 (83 S. E. 122) ; *Shaprio* v. *Steinberg,* 175 *Ga.* 869, 872 (166 S. E. 767) ; *Robson* v. *Harwell,* 6 *Ga.* 589 ; *Cassels* v. *Finn,* 122 *Ga.* 33 (49 S. E. 749, 68 L. R. A. 80, 106 Am. St. R. 91, 2 Ann. Cas. 554) ; *Crump* v. *Crump,* 152 *Ga.* 533 (110 S. E. 225) ; *Brand* v. *Power,* 110 *Ga.* 522 (36 S. E. 53).

The instant case also differs from those cases where the parol trust sought to be imposed would have vested duties and obligations separate and distinct from those which would naturally arise from the "nature of the transaction or the conduct of the parties." Such a case was *Eaton* v. *Barnes,* 121 *Ga.* 548 (49 S. E. 593). Such a

case also is *Jones* v. *Jones,* 196 *Ga.,* infra (26 S. E. 602), now under consideration, where a situation existed which was entirely different from that here involved. There the deed was not without at least a good consideration, if not also, as contended, a valuable one; and the plaintiff not only relied on the terms of the express parol agreement pleaded, which he necessarily had to rely upon, since under the allegations the grantee in the deed from the father of the parties was to convey to the plaintiff a specifically described portion of a tract of land, and no right to recover such particular portion of the tract could have existed from the mere relationship of the parties and the nature of the transaction, but the right, if any, of the plaintiff to thus recover was dependent upon the specific terms of the express parol trust. Also, in the *Jones* case, the party seeking to set up the trust was not the grantor of the deed, seeking to re-establish the status quo, but was a mere voluntary beneficiary of the alleged parol agreement. Here, on the contrary, the intervenors were the grantors, and sought no more than they would be entitled to claim in restoring the status quo that existed when they deeded the property to their brother without any sort of consideration. Their right to have back such half interest in the land or its proceeds existed independently of any express parol agreement by the brother to do that which good conscience required under the existing rights of the parties and the nature of the transaction.

The intervention sought to charge the plaintiff as a substitute trustee, holding for the interventors' benefit; and prayed for a decree "recognizing their ½ interest in said land, and requiring ½ of the purchase-money, whatever it may be, to be paid over" to them. It was not alleged or shown that when the plaintiff conveyed the land to the defendant vendee, he then had notice of any continued interest in the intervenors; although he pleaded and testified as to such notice having been given to him by one of the intervenors before payment of the balance of purchase-money due by him on his notes and security deed to the plaintiff vendor. However, the present proceedings do not involve any right that he might have acquired as a bona fide purchaser under the original deed made to him by the plaintiff. We think that the principle stated in 3 Scott on Trusts, 2431, § 507, is sound and applicable here, and we quote as follows: "Where a trustee in breach of trust transfers trust

property to a third person, the beneficiaries can charge the third person as constructive trustee of the property, if he is not in the position of a bona fide purchaser. . . This right to follow the property into its product, however, is not limited to cases of express trusts. The principle is a broad one. It is applicable not only where the wrongdoer is an express trustee, not only where he is a fiduciary, but wherever a person wrongfully transfers property in which another has a beneficial interest, whether legal or equitable, and receives other property in exchange therefor. In any such case the person whose property is wrongfully used in acquiring the product can reach the product by a proceeding in equity, and he can enforce a constructive trust or an equitable lien." "The owner may claim the product in whatever form it may be . . land, chattels, choses in action, or money." Id. 2437, § 508.2. Accordingly, under the pleadings and the proof, the plaintiff was accountable as a substitute trustee to the intervenors.

While the finding of the jury was merely that the defendant vendee surrender possession of the premises, because of his default in payment and his quitclaim deed back to the plaintiff vendor, and that the intervenors each have a fourth interest in the land, there is no exception to the decree, which went further and provided, as had been offered by the defendant and the intervenors, that the defendant upon payment of the balance of purchase-money have title, and that a stated amount be paid to the intervenors according to their half interest. "If a judgment or decree is erroneous or illegal, direct exception should be taken to it at the proper time." *Berry* v. *Clark*, 117 *Ga.* 964 (44 S. E. 824) ; *Braswell* v. *Palmer*, 194 *Ga.* 484 (6), 488 (22 S. E. 2d, 93). "If the legality of the decree is questioned, and more than the statutory time elapses before the tender of a bill of exceptions, exceptions pendente lite as to the question raised must be taken." *City of Atlanta* v. *Carroll*, 194 *Ga.* 172 (3) (21 S. E. 2d, 86), and cit. "That a judgment or decree does not follow or is not authorized by the verdict, or is not warranted by the pleadings, is not good ground of a motion for new trial." *Manry* v. *Stephens*, 190 *Ga.* 305 (9 S. E. 2d, 58). Accordingly, since there was no exception to the decree as varying the special verdict, and since the exceptions as to matters in the trial are confined to the refusal of a new trial on general and special grounds relating to evidence, no question arises as to the propriety

of provisions in the decree granting relief to the intervenors and to the defendant, as prayed, beyond what was authorized by the verdict.

■ Exception was taken to the admission of testimony from the attorney who represented all parties in preparing the deed from the intervenors to the plaintiff's deceased husband, that the parties came to his office and "worked out an understanding" under which the deed was prepared; and that, "in order to expedite the matter it was decided to let [the intervenors] sign a quitclaim deed and place it in the hands of [their brother], and when this land was sold they were to get their part of the money." The only objection and exception to this testimony was on the grounds that it was inadmissible to prove an "express trust, in that the agreement referred to was entirely in parol, and an express trust to be valid must be in writing;" and that "it was inadmissible to prove an implied trust on the ground that the intervention as amended does not allege an implied trust, but an express trust only." The judge held that, while the testimony was inadmissible "for the purpose of showing an express trust," he would admit it on the question of "implied trust." Under the rulings made in the preceding division of the opinion, the court did not err in the admission of this testimony. Since the sole ground of objection was on the question of a trust, contentions in the brief for the plaintiff that the evidence was inadmissible on other grounds can not be considered.

■ As to whether, irrespective of any trust, the plaintiff had acquired a title by prescription through seven years adverse possession of the land under the voluntary deed from her deceased husband,—a possession that can ripen a good prescriptive title "must be in the right of the possessor, and not of another; must not have originated in fraud; must be public, continuous, exclusive, uninterrupted, and peaceable, and be accompanied by a claim of right." Code, §§ 85-402, 85-404-85-406. The voluntary deed to the plaintiff from her husband, the intervenors' brother, was executed in September, 1934. Under the plaintiff's testimony, she did not go into possession until February, 1935; and she executed her deed to the defendant vendee in December, 1938. This suit was filed in February, 1942. From the testimony of the intervenors (which has been mentioned) on the question of trust, it appears that in

March, 1941, not only was the plaintiff informed as to their claim, but she then partly recognized its validity by promising to give to the intervenors part of the money from the land "when she collected it" from the defendant vendee. It further appears from the evidence that in December, 1941, this vendee in possession was also informed as to the intervenors' interest; and it appears from his pleadings and his evidence that from the information thus acquired in December, 1941, or information previously acquired, the defendant vendee did not hold the land adversely to the intervenors, but refused to complete his escrow agreement with the plaintiff by paying to her the balance of the purchase-price, or by surrendering possession to her, but held the land subject to any valid claim of the intervenors. For these reasons, and since "in all cases of prescription the prescriber must show a possession hostile to that of the owner of the land" (*Mayor &c. of Savannah* v. *Standard Fuel Supply Co.*, 140 *Ga.* 353, 78 S. E. 906, 48 L. R. A. (N. S.) 469), it can not be said that the plaintiff showed the necessary adverse possession, under the deed from her husband in 1934, merely by going on the land in February, 1935, and by the subsequent possession of her vendee, where any hostility of possession was interrupted as to the plaintiff in March, 1941, and as to her vendee in December, 1941.

■ Under the general grounds, there is no merit in the contention that the evidence for the intervenors failed to show title to one half of the purchase-money or land, as found by the jury, and that their interest could not have exceeded one third. The plaintiff contends that her husband, Fain Pittman, his two sisters (the intervenors), Misses Lillie and Hattie Pittman, and a third sister, Mrs. Adams, were deeded by their mother a 4/5 interest in the land, each of the three sisters and the brother thus receiving 1/5, and the mother reserving 1/5; that later the mother's administrator deeded to the brother the mother's 1/5, thus giving him a total interest of 2/5; that *later intervenors jointly conveyed to their sister, Mrs. Adams, "a 1/5 interest," which left them 1/10 each, Mrs. Adams 2/5, and Fain Pittman 1/5;* and that when afterwards Mrs. Adams quitclaimed all her interest to her brother and sisters jointly, this conveyance gave to the intervenors a total interest of only 1/6 each. However, the quoted language of plaintiff's counsel erroneously states or construes the terms of the deed from the two intervenors to Mrs. Adams. That deed did not convey "a 1/5 in-

terest," but expressly conveyed only a "1/5 undivided interest in and to the 2/5 undivided interest of [the intervenors] in and to the [described land], . . it being the intention of the [intervenors] to convey to [Mrs. Adams] a 1/5 undivided interest in and to the 2/5 undivided interest in said tract of land now held by" the intervenors. Since this deed conveyed only a 1/5 of the intervenors' 2/5, it necessarily conveyed only a 2/25 interest; and since the intervenors had owned a 2/5, the conveyance left them still owning 8/25 of the land. Accordingly, when Mrs. Adams, their grantee, later conveyed to the brother and the two sisters jointly all of the interest of Mrs. Adams (which consisted of her original 1/5 plus the 2/25 that had been deeded by the intervenors, a total of 7/25), each of the three grantees took a 7/75 under the last deed. Thus, after the last conveyance, Fain Pittman, the brother, owned his original 2/5 plus the 7/75 received from Mrs. Adams, making his total ownership 37/75; and the intervenors finally owned, under their evidence, not only their 8/25 or 24/75 which they still retained after their deed to Mrs. Adams, but the 7/75 to each of the two which they received by Mrs. Adams' deed to them (14/75 to the two intervenors), which made a total interest of 38/75, slightly more than the ½ which they claimed.

■ For the reasons stated in the ruling that the plaintiff did not show a good prescriptive title against the intervenors, there is no merit in her contention that under the evidence the intervenors were barred by laches. There is no merit in that contention for the additional reason that this question was not raised by the plaintiff in her demurrer to the intervention or by any pleading. See *Small* v. *Cohen,* 102 *Ga.* .248 (3), 253 (29 S. E. 430); *Lee* v. *Holman,* 184 *Ga.* 694 (4), 696 (193 S. E. 68), and cit. The remaining exceptions are in effect general grounds, raising questions which have been determined in the preceding rulings.

*Judgment affirmed. All the Justices concur.*